STATE OF NORTH CAROLINA v. THOMAS FRANKLIN CROSS, JR.

No. 118PA96

(Filed 11 April 1997)

1. Evidence and Witnesses § 1866 (NCI4th); Criminal Law § 637 (NCI4th Rev.)— kidnaping and robbery—fingerprint on car—sufficiency of evidence

The trial court did not err by denying defendant's motion for dismissal in a prosecution arising from a kidnaping and robbery in a motel parking lot, and the Court of Appeals erred by reversing that denial, where a latent fingerprint was found on the edge of a door of the victim's vehicle; the fact that the print was only a partial print, which was cleanly cut off and did not extend over to the rear quarter panel, strongly suggests that the door was open when defendant's finger contacted the vehicle; the evidence was uncontradicted that the only time the rear driver's side door was opened during the victim's stay in Raleigh was when the assailant opened the door and shoved the victim into the backseat; and the agent's testimony that a lot of pressure and twisting was used when the defendant's finger made contact with the vehicle, which suggests that the print was left as defendant pushed the door closed, is consistent with the victim's account of the crime, and does not support an inference that the defendant merely touched the victim's automobile while walking through the parking lot. Viewed in the light most favorable to the State, the evidence was clearly sufficient to establish that the defendant's fingerprint on the victim's vehicle could only have been impressed at the time the crime was committed. Furthermore, although the fingerprint evidence was sufficient standing alone, the Court of Appeals failed to recognize evidence that the assailant abandoned the victim within blocks of where defendant was frequently seen and where defendant was eventually located and arrested, that a pathway existed near that location which led to the back of the apartment defendant was in when he was arrested, that defendant made efforts to change his appearance by shaving his head, that defendant made an effort to evade arrest, and that defendant repeatedly denied his name to police officers. This evidence, combined with the fingerprint evidence, supports a reasonable inference of defendant's guilt and makes it clear that the trial court correctly sent the case to the jury.

**Am Jur 2d, Evidence §§ 95, 569, 1482.**

**Fingerprints, palm prints, or bare footprints as evidence. 28 ALR2d 1115.**

2. **Criminal Law § 649 (NCI4th Rev.); Constitutional Law § 231 (NCI4th)— denial of motion to dismiss—reversed by Court of Appeals—upheld by Supreme Court—not double jeopardy**

The review by the Supreme Court of a Court of Appeals' reversal of a trial court denial of a motion to dismiss in a prosecution arising from a kidnaping and robbery did not constitute double jeopardy. The Court of Appeals remanded for entry of judgment, but, prior to such entry, the Supreme Court granted discretionary review and acquired jurisdiction. There has been no dismissal by any court upon which jeopardy can attach.

**Am Jur 2d, Criminal Law §§ 243 et seq.**

Justice FRYE concurring.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, 121 N.C. App. 788, 467 S.E.2d 911 (1996), finding error and reversing an order denying defendant's motion to dismiss entered by Hight, J., at the 7 March 1994 Criminal Session of Superior Court, Wake County. Heard in the Supreme Court 11 December 1996.

*Michael F. Easley, Attorney General, by Teresa L. Harris, Associate Attorney General, for the State-appellant.*

*W. Hugh Thompson for defendant-appellee.*

LAKE, Justice.

The defendant was tried and convicted of first-degree kidnapping, common-law robbery, assault with a deadly weapon inflicting serious injury, and nine counts of obtaining property by false pretense. Judge Hight sentenced defendant to a total of sixty years' imprisonment.

At trial, the State's evidence tended to show that Nancy White, the victim, arrived at the Crabtree Sheraton Hotel in Raleigh, North Carolina, on Friday, 22 October 1993. White parked her automobile in the hotel's left side parking lot. After retrieving her luggage from the

trunk, White locked her car and checked into the hotel. None of the doors, except the driver's door, were opened at that time. White checked out of the hotel on the morning of Sunday, 24 October 1993. During her stay, White did not move her car, place anything in her car or take anything out of her car.

As White loaded her luggage into the trunk of her car, a man passed between her vehicle and an adjacent vehicle. White testified that she "glanced up for a split second and back down again because he was moving fast, he was walking swiftly and just went by." A few seconds later, White glanced down and noticed the shadow of a person approaching from behind. White testified that before she could react, the individual grabbed her arms and said, "get in the car." When White refused, she was thrown face down between the parked automobiles and beaten on her back and on the back of her head. The assailant obtained White's car keys, opened both the front and rear doors on the driver's side of the car, forced White into the backseat and got behind the wheel. The assailant then reached back with his right hand; grabbed White's hair, causing her head to be pulled back "at a very awkward angle"; and threatened to cut White's throat if she did not remain quiet. The assailant began driving.

After some time had passed, the assailant let go of White's hair and told her not to move and not to look at him. The assailant handed White some cards from White's wallet and demanded that she give him a bank card. White surrendered her ATM card and her access code. The assailant made numerous stops for money. Eventually, White heard the car being driven over gravel. The assailant stopped the car, cut the motor off and left. White then drove her automobile until she located a police officer and reported the incident.

A review of White's bank records revealed nine attempted ATM withdrawals from White's account on 24 October 1993. The assailant was able to withdraw one hundred dollars on three separate occasions. His other attempted withdrawals were unsuccessful.

Although White was unable to see her assailant clearly because her glasses had fallen off at some point during the attack, she described him to the best of her ability and assisted the police in the creation of a composite sketch. Defendant was subsequently arrested and fingerprinted. At the time of his arrest, the defendant was found hiding from police in an apartment near the location where the assailant had abandoned White's car. Defendant had also shaved his head and repeatedly denied that his name was Cross.

At trial, White could neither identify nor eliminate the defendant as the person who attacked her. White did state that the defendant fit the general description and appearance of the person who committed the crimes.

Agent Ken Duke of the City/County Bureau of Identification testified that he processed White's vehicle for latent fingerprints across the trunk and along the vehicle doors. He also processed various items left inside the vehicle. Agent Duke was able to locate four latent prints, three on the vehicle and one on White's driver's license. One of the prints found was a partial latent print lifted off the left (driver's side) rear door on the very rear edge of the door.

Agent Joseph Ludas, a latent print examiner with the City/County Bureau of Identification and an expert in the field of fingerprint identification, identified the fingerprint taken from the left rear door of White's vehicle as corresponding to the right index finger of the defendant. Agent Ludas testified that the defendant's finger contacted White's car on the edge of the left rear door in a twisting, turning motion. Agent Ludas also testified that the ridge detail, due to its darkness and width, indicated that the defendant used a lot of pressure when he left the print on the vehicle. The remaining three prints were of "poor quality" and could not be identified.

Prior to the weekend of the attack, White's vehicle had never been in Raleigh. Defendant had never been a guest in her vehicle, and White did not know of any period of time when defendant would have been around her vehicle.

At the close of the State's evidence, defendant moved to dismiss the charges based on the insufficiency of the evidence. The trial court denied the defendant's motion, the jury returned verdicts of guilty, and the defendant appealed. The Court of Appeals reversed the trial court, holding that there was insufficient evidence to show that defendant's fingerprint, which was the only evidence tending to prove defendant committed the crimes charged, could only have been impressed at the time the crimes were committed. We allowed the State's petition for discretionary review.

[1] In its only assignment of error, the State contends that the Court of Appeals erred in reversing the trial court's denial of defendant's motion to dismiss.

When a defendant moves for dismissal, the trial court must determine whether the State has presented substantial evidence of each

STATE v. CROSS

[345 N.C. 713 (1997)]

essential element of the offense charged and substantial evidence that the defendant is the perpetrator. *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992). If substantial evidence of each element is presented, the motion for dismissal is properly denied. "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.*

In ruling on the motion to dismiss, the trial court must view all of the evidence, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor. *State v. McCullers*, 341 N.C. 19, 28-29, 460 S.E.2d 163, 168 (1995). The trial court need not concern itself with the weight of the evidence. In reviewing the sufficiency of the evidence, the question for the trial court is whether there is "any evidence tending to prove guilt or which reasonably leads to this conclusion as a fairly logical and legitimate deduction." *State v. Franklin*, 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990). Once the court decides a reasonable inference of defendant's guilt may be drawn from the evidence, "it is for the jurors to decide whether the facts satisfy them beyond a reasonable doubt that the defendant is actually guilty." *State v. Murphy*, 342 N.C. 813, 819, 467 S.E.2d 428, 432 (1996).

Regarding the sufficiency of fingerprint evidence to withstand a motion to dismiss, this Court has stated:

[T]he rule that testimony by a qualified expert that fingerprints found at the scene of the crime correspond with the fingerprints of the accused, when accompanied by *substantial evidence of circumstances from which the jury can find that the fingerprints could only have been impressed at the time the crime was committed*, is sufficient to withstand motion for nonsuit and carry the case to the jury. The soundness of the rule lies in the fact that such evidence logically tends to show that the accused was present and participated in the commission of the crime.

*State v. Miller*, 289 N.C. 1, 4, 220 S.E.2d 572, 574 (1975) (emphasis added). The State argues that the Court of Appeals erroneously applied this standard to the facts of this case in determining that the evidence presented was insufficient to withstand defendant's motion to dismiss. We agree.

Kent Duke, an identification agent with the City/County Bureau of Identification, found a latent fingerprint on the edge of the left rear door of the victim's vehicle. Agent Duke testified that the latent print

was only one finger and was a portion of the finger, "like it had been cut off." This fact prompted Agent Duke to process the rear quarter panel adjacent to the area where the print was found on the rear door. No fingerprints or partial fingerprints were found in the area adjacent to the left rear door. In other words, the rear portion or remainder of this partial print did not extend over to the rear quarter panel of the car. Agent Joseph Ludas, a latent print examiner with the City/County Bureau of Identification, testified, as an expert in the field of fingerprint identification, that the latent fingerprint found on the left rear door of the victim's vehicle matched the right index finger of the defendant.

The fact that the defendant's fingerprint was only a partial print, which was cleanly cut off and did not extend over to the rear quarter panel, strongly suggests that the door was open when the defendant's finger contacted the vehicle. The evidence is uncontradicted that the only time the rear driver's side door was opened during the victim's stay in Raleigh was when the assailant opened the door and shoved the victim into the backseat. Moreover, Agent Ludas testified that a lot of pressure and twisting was used when the defendant's finger made contact with the vehicle. This fact, when viewed in the light most favorable to the State, logically suggests that the print was left as defendant pushed the back door closed. The fingerprint evidence is consistent with the victim's account of the crime and does not support an inference that the defendant merely touched the victim's automobile while walking through the Crabtree Sheraton parking lot. Viewed in the light most favorable to the State, the evidence was clearly sufficient to establish that the defendant's fingerprint on the victim's vehicle could only have been impressed at the time the crime was committed.

Although the fingerprint evidence, standing alone, was sufficient to send this case to the jury, we note that the Court of Appeals completely overlooked additional pieces of corroborating evidence. In its decision, the Court of Appeals stated that the "only evidence tending to prove defendant committed the offenses with which he was charged was the solitary fingerprint located on the left rear door of White's vehicle. No other evidence connecting defendant to the scene of the crime was presented." *State v. Cross*, No. COA94-746, slip op. at 6 (N.C. App. March 5, 1996). The Court of Appeals failed to recognize evidence that the assailant abandoned the victim within blocks of where the defendant was frequently seen and where defendant was eventually located and arrested, that a pathway existed near that

location which led to the back of the apartment defendant was in when he was arrested, that the defendant made efforts to change his appearance by shaving his head, that the defendant made an effort to evade arrest, and that the defendant repeatedly denied to police officers that his name was "Cross." This evidence, combined with the fingerprint evidence, supports a reasonable inference of defendant's guilt and further makes it clear that the trial court correctly sent the case to the jury.

[2] Finally, the defendant contends that review of the decision of the Court of Appeals by this Court violates the defendant's constitutional protection against double jeopardy. Defendant points out that had the trial court granted his motion to dismiss, the case would have terminated and would not have been appealable by the State. Defendant argues that no distinction should be made regarding the appealability of a ruling by the trial court and a ruling of the Court of Appeals that the evidence was insufficient. We disagree.

This Court has held that when a motion to dismiss for insufficiency of the evidence is *granted* by the trial court, and judgment is *entered* in accordance therewith, such judgment shall have the force and effect of a not-guilty verdict. *See State v. Stinson*, 263 N.C. 283, 139 S.E.2d 558 (1965). Contrary to the defendant's position, review by this Court is not precluded since a judgment was never "entered" by the trial court dismissing this action. The Court of Appeals reversed the trial court's ruling and remanded to that court for entry of judgment. Prior to such entry of judgment, however, this Court granted the State's petition for discretionary review, thereby acquiring jurisdiction over this matter. There simply has been no dismissal, by the trial court or any other court, of the charges against defendant upon which jeopardy can attach. This assignment of error is without merit and is therefore overruled.

Accordingly, we reverse the decision of the Court of Appeals and remand this case to that court for further remand to the Superior Court, Wake County, for reinstatement of its judgments against the defendant.

REVERSED AND REMANDED.

Justice FRYE concurring.

I find it unnecessary to decide, in this case, whether, as the majority states, "the fingerprint evidence, standing alone, was sufficient to

send this case to the jury." As the opinion points out, other evidence tending to show that defendant was the perpetrator of the crimes charged in this case was introduced at trial. I agree with the majority that the fingerprint evidence, together with the corroborating evidence, was substantial evidence sufficient to take the case to the jury and to sustain the verdicts in this case. Whether the fingerprint evidence, "standing alone," was sufficient, substantial evidence to take the case to the jury against this defendant for first-degree kidnapping, common-law robbery, assault with à deadly weapon inflicting serious injury, and nine counts of obtaining property by false pretenses is a question we need not decide today. Accordingly, I concur in the result reached by the majority of this Court, but not the reasoning.