MARTIN, Chief Judge.
Defendant was charged with driving while impaired, driving while licence revoked, and exceeding the speed limit, and subsequently indicted for habitual impaired driving. The evidence presented at trial tended to show the following: On 27 October 2002, Officer Aaron Lappin of the Roxboro Police Department was on patrol when he saw a vehicle traveling toward him at a high rate of speed. The car, a Chevrolet Corsica, was driving erratically and came into Officer Lappin's lane, almost hitting him. Officer Lappin turned around and pursued the vehicle. As he caught up to it, he noticed it make a right turn, cut through a parking lot, and enter Henry's Quick Stop parking lot. Officer Lappin activated hisblue lights and initiated a stop.
Once the vehicle came to a stop, Officer Lappin approached the vehicle and asked defendant for his driver's license and registration. Defendant did not have a driver's license in his possession, and could only give him his name and date of birth. While at the vehicle, Officer Lappin noticed a strong odor of alcohol coming from the defendant's car. Officer Lappin also noticed that defendant's eyes were glassy and he was slow to respond to questions. Defendant got out of the vehicle, leaning on the door as he did so, and swayed as he walked towards the patrol car. Officer Lappin again noticed a strong odor of alcohol coming from defendant's person. Officer Lappin administered a field sobriety test, and defendant had to "feel around" to find the tip of his nose. Defendant refused to perform any other test. Officer Lappin formed the opinion that defendant had consumed a sufficient quantity of some impairing substance to sufficiently impair his mental and physical faculties.
Officer Lappin transported defendant to the Law Enforcement Center for the purpose of administering an intoxilyzer test. Defendant submitted one sample, but refused to give a second sample. The first sample registered an alcohol concentration of 0.12.
Defendant was convicted of habitual impaired driving and driving while license revoked. Defendant was sentenced to a term of nineteen to twenty-three months imprisonment for the habitual impaired driving conviction, and a consecutive term of 120 days fordriving while license revoked. Defendant appeals.
We first consider whether the trial court should have dismissed the case because there was insufficient evidence to support a finding of probable cause for the stop. Defendant contends that the arresting officer's testimony was completely different than his investigative report, and it was apparent that the officer did not have probable cause for the stop. Thus, defendant argues that his conviction must be vacated. We do not agree.
After the trial had started, defendant's counsel asked for a voir dire to question Officer Lappin regarding the legality of the stop. Although defendant's argument on appeal is couched in terms of a denial of a motion to dismiss, it was in actuality a motion to suppress and was treated by the trial court as such. The motion to suppress was denied. "The scope of review on appeal of the denial of a defendant's motion to suppress is strictly limited to determining whether the trial court's findings of fact are supported by competent evidence, in which case they are binding on appeal, and in turn, whether those findings support the trial court's conclusions of law." State v. Corpening, 109 N.C. App. 586, 587-88, 427 S.E.2d 892, 893 (1993).
Here, based on Officer Lappin's testimony, the trial court found that defendant crossed the center lane, forcing Officer Lappin to take evasive action and almost forcing his car off the road. The trial court found that Officer Lappin had probable causeto investigate and detain defendant to determine why he was operating his car "in an erratic manner." The trial court's findings were based on competent evidence in the record. Based on the evidence and findings of fact, the trial court could properly conclude that Officer Lappin had at least reasonable suspicion, if not probable cause, to execute the stop. Accordingly, the motion to suppress was properly denied.
Defendant next argues there was insufficient evidence to sustain the convictions. Defendant contends there was no evidence that he was too impaired to drive or that he was driving while license revoked.
After careful review of the record, briefs and contentions of the parties, we find no error. To survive a motion to dismiss, the State must present substantial evidence of each essential element of the charged offense. State v. Cross, 345 N.C. 713, 716-17, 483 S.E.2d 432, 434 (1997). "`Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.'" Id. at 717, 483 S.E.2d at 434 (quoting State v. Olson, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992)).
In the present case, defendant was charged with habitual DWI under G.S. 20-138.5 and driving while license revoked. "A person commits the offense of habitual impaired driving if he drives while impaired as defined in G.S. 20-138.1 and has been convicted of three or more offenses involving impaired driving as defined in G.S. 20-4.01(24a) within seven years of the date of this offense." N.C. Gen. Stat. 20-138.5(a). At trial, defendant stipulated tothree prior convictions for impaired driving. Thus, the only issue was whether defendant was guilty of impaired driving on 27 October 2002. Pursuant to G.S. 20-138.1(a):
A person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State:
(1) While under the influence of an impairing substance; or
(2) After having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or more.
N.C. Gen. Stat. 20-138.1(a). The State presented evidence that: (1) defendant's breath sample had an alcohol concentration of 0.12; (2) defendant refused to submit a second breath sample; (3) defendant was driving erratically; (4) defendant smelled of alcohol; and (5) defendant was unable to pass a field sobriety test, and refused to complete it.
"To convict a person of the crime of driving with a revoked license, the State must prove beyond a reasonable doubt that defendant was on notice that his driver's license was revoked." State v. Funchess, 141 N.C. App. 302, 311, 540 S.E.2d 435, 440 (2000)(citations omitted). Here, Officer Lappin testified that a notice of revocation was mailed to defendant at his permanent address on 16 July 2002. Additionally, defendant did not have a driver's license on his person when he was arrested. Based on this evidence, in the light most favorable to the State, a jury could properly conclude that defendant committed the offenses of habitual impaired driving and driving while license revoked. Defendant next argues that the trial court erred by admitting evidence of the intoxilyzer results. After his arrest, defendant submitted to an intoxilyzer test. However, defendant only submitted one sample, refusing to submit to a second test. At trial, defendant argued it was error to admit evidence of his intoxilyzer test when the statutory requirement is that the State have two tests within .02 reading of each other in order to utilize the results. On appeal, defendant concedes that the statute has been changed to read that:
A person's refusal to give the second or subsequent breath sample shall make the result of the first breath sample, or the result of the sample providing the lowest alcohol concentration if more than one breath sample is provided, admissible in any judicial or administrative hearing for any relevant purpose, including the establishment that a person had a particular alcohol concentration for conviction of an offense involving impaired driving.
N.C. Gen. Stat. 20-139.1(b3).
For the first time, on appeal, defendant attempts to instead argue that the trial court should not have admitted the results of the intoxilyzer because defendant failed to execute an affidavit in accordance with G.S. 20-16.2(c1). See also State v. Summers, 351 N.C. 620, 621-22, 528 S.E.2d 17, 19 (2000)("If an individual charged with an implied-consent offense willfully refuses to submit to chemical analysis, after being informed of the consequences of willful refusal, in accord with N.C.G.S. § 20-16.2, the charging officer must execute an affidavit to that effect[.]"). We decline to review defendant's argument. Our Supreme Court "has long held that where a theory argued on appeal was not raised before the trial court, `the law does not permit parties to swap horses between courts in order to get a better mount'" in the appellate courts. . . . . "The defendant may not change his position from that taken at trial to obtain a `steadier mount' on appeal."
State v. Holliman, 155 N.C. App. 120, 123, 573 S.E.2d 682, 685 (2002). Accordingly, we find no error.
No error.
Judges McCULLOUGH and CALABRIA concur.
Report per Rule 30(e).