STATE OF NORTH CAROLINA
v.
JOSE EDUARDO NUFIO SALAZAR, a/k/a NOE VELASQUEZ AMBROCIO
No. COA07-893
Court of Appeals of North Carolina.
Filed June 17, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Gaines M. Weaver, for the State.
D. Tucker Charns, for defendant-appellant.
CALABRIA, Judge.
Jose Eduardo Nufio Salazar, a/k/a Noe Velasquez Ambrocio, ("defendant") appeals a judgment entered upon a jury verdict finding him guilty of trafficking in marijuana. We find no error.
The State presented the following evidence: On 8 July 2004, Detective Duane James ("Detective James") of the Greensboro Police Department was working undercover in the Vice and Narcotics Division. Earlier in the day, Detective James had been contacted by Jose Martinez Figuero ("Figuero"). Detective James had been negotiating narcotics transactions with Figuero for the previous three to four months. Figuero stated that he had twenty pounds of marijuana to sell him for $13,000. Around 7 p.m., Detective James went to the Hidden Lakes Apartments ("the apartment complex") tomeet with Figuero.
Prior to arriving, Detective James was informed by officers who were surveilling the apartment complex that they observed a burgundy Honda frequently driven by Figuero. Detective James parked his vehicle at the apartment complex. After a few seconds, Figuero entered the burgundy Honda and parked the vehicle beside Detective James' vehicle. Figuero then entered Detective James' vehicle and asked him if he was ready to make the purchase. Detective James said he was ready. Figuero exited the vehicle, returned to the Honda, popped open the hood, and retrieved a small baggie of marijuana. When Figuero brought the marijuana to Detective James, he accepted the marijuana, walked it over to another undercover detective's vehicle, then returned to Figuero. Detective James told him the marijuana "looked good" and he wanted to purchase it. Figuero told Detective James to "give [him] a couple of minutes" so he could call his "people" and arrange the transaction. Detective James did not hear back from Figuero until approximately 9:45 p.m. that evening. Detective James contacted Figuero to tell him that the "deal was off" and he was not going to wait around for him any longer. Then Detective James told Figuero that "[i]f you want to do it, you need to be at the BP gas station within the next 10 to 15 minutes."
Detective James arrived at the BP gas station first. Meanwhile, Figuero left the apartment complex in the Honda. A Mitsubishi Eclipse, driven by defendant, left the apartment complex in tandem with Figuero's Honda. Both vehicles arrived at the BP gas station. Figuero exited the Honda, along with a passenger identified as Gerardo Lamos Rios ("Rios"). Rios, Figuero, and Detective James had a short meeting in front of the Honda, and Rios informed Detective James that the marijuana was in the Mitsubishi. Rios and Detective James then walked to the Mitsubishi.
As they approached the Mitsubishi, defendant exited the vehicle, stood at the gas pump, and inserted the gas nozzle into the gas tank. Rios had a conversation with defendant in Spanish, and then defendant left and entered the convenience store. At that time, Rios got into the back seat of the Mitsubishi and asked Detective James to sit inside the vehicle. As he sat in the vehicle, Detective James detected a strong odor of marijuana. Rios tried to pull down the back seat, but was unsuccessful. He then got out of the vehicle, retrieved the keys that defendant had left in the door to the gas tank, re-entered the vehicle and unlocked the top part of the back seat. Rios then was able to pull down a small section of the back seat which allowed access to the trunk area. Rios pulled out a bag of marijuana with a tear in it and showed the bag to Detective James. Detective James then exited the vehicle. At about the same time, defendant returned to the vehicle. Defendant, Rios and Figuero were all arrested. Subsequent testing at the North Carolina State Bureau of Investigation confirmed that the bag contained 20.7 pounds of marijuana.
At the conclusion of the State's evidence, defendant presented the following evidence: Defendant was employed as a mechanic and on 8 July 2004, he drove his girlfriend's vehicle, a Mitsubishi Eclipse, to an auto services shop owned by Rios to purchase car parts. When defendant arrived at the shop, Rios asked him to help repair a vehicle that was located at a parking lot. Because Rios did not have a vehicle or a valid driver's license, defendant drove Rios to a parking lot. When they arrived at the parking lot, defendant learned he was expected to help repair a Honda owned by Figuero. As Rios and defendant worked on the Honda, Figuero, whom defendant just met, asked to borrow defendant's vehicle. Defendant agreed and when Figuero returned defendant's vehicle, the Honda was repaired. Rios then told defendant they needed to follow Figuero to his apartment in order to get paid. The three men then drove to Figuero's apartment complex and entered one of the apartments.
After defendant was in the apartment for approximately thirty minutes, Figuero told defendant that they would need to leave and meet a man at a gas station who owed him money and then he would be able to pay defendant for fixing the Honda. When the three men left the apartment, either Rios or Figuero carried a bag. As they approached defendant's vehicle, Rios asked defendant to open the trunk, and defendant was not certain what happened to the bag after he opened the trunk. Defendant was unaware of the contents of the bag.
On 14 July 2006, following a jury verdict of guilty of trafficking in marijuana by possession of more than 10 pounds but less than 50 pounds, Judge Ronald E. Spivey sentenced defendant to a minimum term of twenty-five months and a maximum of thirty months in the North Carolina Department of Correction. Defendant appeals.
On appeal, defendant argues that the trial court erred by denying his motion to dismiss for insufficiency of the evidence. Specifically, defendant contends that the State failed to prove that he possessed the marijuana.
To survive a motion to dismiss, the State must present substantial evidence of each essential element of the charged offense. State v. Cross, 345 N.C. 713, 716-17, 483 S.E.2d 432, 434 (1997). "`Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.'" Id. at 717, 483 S.E.2d at 434 (quoting State v. Olson, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992)). Furthermore, upon a motion to dismiss, "[t]he trial court must [] resolve any contradictions in the evidence in the State's favor. The trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witness' credibility." State v. Robinson, 355 N.C. 320, 336, 561 S.E.2d 245, 256 (2002) (citations omitted), cert. denied, 537 U.S. 1006, 154 L. Ed. 2d 404 (2002) .
Defendant was charged with trafficking in marijuana by possession of more than 10 pounds but less than 50 pounds. To withstand the motion to dismiss, the State must present evidence that defendant had either actual or constructive possession of the marijuana. See State v. Weldon, 314 N.C. 401, 403, 333 S.E.2d 701, 702 (1985). "Actual possession requires that a party have physical or personal custody of the item." State v. Alston, 131 N.C. App. 514, 519, 508 S.E.2d 315, 318 (1998) (citing 28 C.J.S. Drugs and Narcotics § 170, at 773 (1996)). However, "in a prosecution for possession of contraband materials, the prosecution is not required to prove actual physical possession of the materials. Proof of constructive possession is sufficient and that possession need not always be exclusive." State v. Perry, 316 N.C. 87, 96, 340 S.E.2d 450, 456 (1986) (citations omitted). Under a theory of constructive possession:
a person may be charged with possession of an item such as narcotics when he has both the power and intent to control its disposition or use even though he does not have actual possession. Where such materials are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession. However, unless the person has exclusive possession of the place where the narcotics are found, the State must show other incriminating circumstances before constructive possession may be inferred.
State v. Davis, 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989) (internal quotation marks omitted) (citations omitted).
In the instant case, when defendant arrived at the BP gas station, he was driving his girlfriend's vehicle, and was the only person in the vehicle. The State's evidence also shows that both Rios and Figuero never had the opportunity to place the marijuana in the vehicle after their arrival at the gas station. This evidence leads to the inference that defendant did have exclusive control over the vehicle and that the mere finding of marijuana inside the vehicle would support a finding of possession by defendant.
However, even if defendant did not have exclusive control over the vehicle, there were ample "incriminating circumstances "in which the jury could conclude defendant possessed the marijuana found in the vehicle. Id.
Detective James testified that when he walked to the Mitsubishi parked at the gas station, defendant appeared to be "checking me out" to make sure he was not a police officer, and only pretended to be pumping gas into the vehicle. Defendant did not appear to be surprised when Detective James and the other undercover officers approached the Mitsubishi. Detective James said that as he approached the Mitsubishi, Rios spoke to defendant in Spanish, and then defendant walked inside the convenience store. Detective James further testified that there was a large speaker box and other items in the trunk. These items in the trunk prevented him from accessing the section where the marijuana was discovered and the section could only be accessed by using a key for the lock in the back seat. Rios did not have the key when he arrived at the gas station and therefore could not unlock and pull down a small section of the vehicle's backseat. He retrieved the keys from where defendant had left them in the door to the gas tank and then was able to "pull down a small section of the backseat which accessed the [vehicle's] trunk area." From this evidence, the jury can reasonably infer that defendant left the keys for Rios to gain access to the marijuana.
Detective James also testified that there was an "obvious"odor of marijuana in the vehicle, making it unlikely that defendant would be ignorant of the presence of the marijuana in the vehicle. When Rios showed Detective James the bag containing marijuana, the bag "already had a tear." In addition, after defendant returned from the convenience store, when another officer asked defendant which vehicle was his, defendant told him the Honda and also pointed to the Honda.
Accordingly, when we view the evidence in the light most favorable to the State, we hold that a jury could rationally conclude that defendant knew the marijuana was in the vehicle, and had the "power and intent to control" the marijuana . Id. W e find no error.
No error.
Chief Judge MARTIN and Judge GEER concur.
Report per Rule 30(e).