STATE OF NORTH CAROLINA
v.
KENNY DEMETRIUS WILDER.
No. COA08-90
Court of Appeals of North Carolina
Filed July 15, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General K.D. Sturgis, for the State.
Charlotte Gail Blake, for defendant-appellant.
CALABRIA, Judge.
Kenny Demetrius Wilder ("defendant") appeals from a judgment entered upon a jury verdict finding him guilty of robbery with a dangerous weapon. We find no error.
The State presented evidence tending to show that on the morning of 6 April 2006, John Aaron Bailey ("Bailey") was accosted and robbed by three men while attempting to enter the residence he shared with Tamara Griffin ("Tamara") at Camden Wendover Apartments in Greensboro, North Carolina. A man wearing a gray hood, dark gloves, and a dark bandana covering his face emerged from behind a stairwell with a gun in his hand and told Bailey to "give it up[.]" Yelling "Tamara, Tamara[,]" Bailey "tussled" in the breezeway with the gunman and a similarly-dressed man who was trying to shock Bailey with a cattle prod. A third man, wearing a camouflage jacket, approached Bailey from behind and placed him in a choke hold. Bailey continued to struggle and ended up on the ground with his hand on the barrel of the hooded man's gun. With the gunman demanding his money, Bailey surrendered between $1,500 and $2,000 from his back pocket, which his grandmother had given him to pay his rent and buy a computer for school. Bailey began to lose consciousness from being choked but was aware that his assailants were carrying him through the breezeway toward the wooded area behind his apartment. Approximately "halfway to the woods[,]" they dropped Bailey to the ground and ran back through the breezeway toward the parking lot in front of the building.
Bailey ran back to his apartment and called out for Tamara. When she did not answer, he kicked open the door and went inside but did not see her. Bailey ran back outside and saw a handgun lying on the ground. He saw police officers in the parking lot. When he approached the officers, he saw that they had two suspects in custody  one wearing a camouflage jacket, and the second lying "face down on the ground . . . [with] a hood on." Bailey identified defendant by name to police as the man who placed him in a choke hold, based upon "[t]he camouflage jacket that he had on." Bailey knew defendant as a friend of Tamara's brothers, Javon and Jamont Griffin, and had spoken to him casually at the Griffins' house. Upon seeing defendant, Bailey recognized the voice of the gunman as belonging to defendant's brother, Derrick Harrell ("Harrell"). Although Bailey could not see the face of the prone suspect, he told the officers that "those are the guys who robbed me." The officers instructed Bailey to wait for them in his apartment. On his way home, he picked up the gun he previously observed on the ground and threw it over a rail into the woods.
When the officers arrived at Bailey's apartment, Tamara emerged from the bathroom. Bailey told the officers about the robbery and was taken with Tamara to the police station. At the station, Bailey saw that the second suspect apprehended with defendant was Torrey Holley ("Holley"), whose aunt lived on the same street as Bailey's mother. Bailey told police that defendant's brother, Harrell, was the third assailant who had threatened him with the gun during the robbery.
Defendant subsequently was arrested and charged with robbery with a dangerous weapon. Defendant presented evidence that while Holley robbed Bailey, defendant was not involved. Instead, defendant gave Holley a ride "to see a girl." Then, after defendant had driven away, Holley met a friend whose nickname is "Black" and waited for Bailey to return home. Later, when the police arrived, "Black" fled with the money.
On 30 November 2006, in Guilford County Superior Court, the jury returned a verdict finding defendant guilty of robbery with a dangerous weapon. The Honorable Catherine C. Eagles sentenced defendant to a minimum of 72 months and a maximum of 96 months in the North Carolina Department of Correction. From the judgment, defendant appeals.
I. Motion to Dismiss
In his sole argument on appeal, defendant argues the trial court erred in denying his motion to dismiss the charge of robbery with a dangerous weapon. We disagree.
To survive a motion to dismiss, the State must present substantial evidence of each essential element of the charged offense and that the defendant is the perpetrator. State v. Cross, 345 N.C. 713, 716-17, 483 S.E.2d 432, 434 (1997). "'Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.'" Id. at 717, 483 S.E.2d at 434 (quoting State v. Olson, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992)). "In considering a motion to dismiss, the trial court must analyze the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from the evidence." State v. Parker, 354 N.C. 268, 278, 553 S.E.2d 885, 894 (2001)(citation omitted), cert. denied, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002). "[C]ontradictions and inconsistencies do not warrant dismissal; the trial court is not to be concerned with the weight of the evidence." State v. Lee, 348 N.C. 474, 488, 501 S.E.2d 334, 343 (1998)(citation omitted). "[I]f the trial court determines that a reasonable inference of the defendant's guilt may be drawn from the evidence, it must deny the defendant's motion even though the evidence may also support reasonable inferences of the defendant's innocence." State v. Ford, 136 N.C. App. 634, 641, 525 S.E.2d 218, 223 (2000). Defendant notes that Bailey did not recognize him during the actual robbery, and that no forensic evidence linked him to the crime. He further suggests that the circumstantial evidence created no more than "a suspicion" of his guilt. However, we find substantial evidence of defendant's participation in the armed robbery of Bailey on the morning of 6 April 2006.
"The essential elements of robbery with a dangerous weapon are (1) the unlawful taking or attempted taking of personal property from a person or in his presence (2) by use or threatened use of any firearms or other dangerous weapon, implement or means (3) whereby the life of a person is endangered or threatened."State v. James, 321 N.C. 676, 686-87, 365 S.E.2d 579, 586 (1988) (citations omitted). Furthermore, a defendant who joins with others to commit a criminal offense may be found guilty under the doctrine of concerted action, even though he does not personally commit each essential element of the crime. State v. Abraham, 338 N.C. 315, 346, 451 S.E.2d 131, 147 (1994).
In the case sub judice, the State presented evidence that Tamara was awakened on the morning of 6 April 2006 by Bailey calling her name from outside the apartment. She walked outside and saw two men fighting with Bailey. As she went back inside, she saw a third man in a camouflage jacket run past her window. Tamara called 911 and reported that her "boyfriend was getting robbed."
Officer Mark T. Tickerhoff of the Greensboro Police Department ("Officer Tickerhoff") was dispatched to Camden Wendover Apartments at 4:53 a.m. on 6 April 2006, and saw two suspects "wearing dark colored hooded sweat shirts with a black ski mask pulled up covering their face" standing next to a gray Mercury automobile that was backed into the last space in the parking lot. Officer Tickerhoff ordered the two men onto the ground. One of the men, later identified as Holley, complied. "The other suspect ran towards the wood line." As Officer Tickerhoff was restraining Holley in handcuffs, Officer Robert Capps of the Greensboro Police Department ("Officer Capps") arrived and discovered defendant seated in the driver's seat of the gray Mercury, within a few feet of Officer Tickerhoff. As Officer Capps ordered defendant out of the vehicle, Bailey approached the officers and identified Holley and defendant as "the ones who beat him up and robbed him." Officer Tickerhoff searched the area where Holley had been standing and found a black book bag containing duct tape and "a three foot long green and white device, which appeared to be a cattle prod."
Officer Capps testified that he arrived in the parking lot as Officer Tickerhoff was taking a subject into custody next to a 1986 silver Mercury Marquis. After discovering defendant "hunched down, hunkered down kind of leaning back in the driver's side seat of the vehicle[,]" Officer Capps drew his service weapon and ordered him out of the vehicle. Defendant identified himself as Kenny Demetrius Wilder but could not produce any identification. He told Officer Capps "that he came up to Greensboro to visit his cousin . . . [but] was lost, so he pulled into the apartment complex to get some sleep." Defendant consented to a search of the vehicle. Officer Capps found a black coat with an orange lining on the front seat and three cell phones on the floorboard, all of which defendant said belonged to him. At defendant's suggestion, Officer Capps looked inside the coat for his identification but found only $300 in $20 bills.
Officer Stephen McGuire of the Greensboro Police Department ("Officer McGuire") testified that he searched the interior of the gray Mercury Marquis on the morning of 6 April 2006, and retrieved a black flight jacket with an orange lining from the floor behind the driver's seat. Inside a pocket on one of the jacket's sleeves, Officer McGuire found a "pay stub from McDonald's [with] the name Torrey A. Holley on it with a social security number." Officer McGuire also seized a book bag containing school books and notebooks from the vehicle's back seat. Defendant's name was written in one of the notebooks. Officer Karen Carver testified that she recovered a loaded . 45 caliber handgun behind Bailey's apartment building "lying in the weeds" between the breezeway and the woods.
Officer Derrick Whitley of the Greensboro Police Department ("Officer Whitley") confirmed that the gray Mercury Marquis was registered to defendant's mother, Myra Harrell Wilder. He further confirmed that defendant was clad in a camouflage jacket when he was photographed at the Greensboro police station on the morning of 6 April 2006.
Officer Christopher E. Tuck ("Officer Tuck") relieved Officer Capps at the end of his shift at 7:00 a.m. on 6 April 2006, and transported defendant from the police station to the magistrate's office across the street. While waiting for Officer Whitley, Officer Tuck overheard the following conversation between defendant and Holley, who were in adjacent holding cells divided by a cinder block wall:
. . . Mr. Holley stated, quote, "Did you see him running screaming Tamara, Tamara," end quote. That's when [defendant] stated, "You should have used the stun gun on him." Holley then replied, quote, "Man, that wouldn't have worked, end quote. [Defendant] told Holley, "Man, you shouldn't have left that paycheck stub in my car." Holley replied, quote, "Man, don't worry about it," end quote.
Lastly, on cross-examination, Holley acknowledged that he pled guilty, under oath, to conspiring "with Kenny Wilder to commit the felony of robbery with a dangerous weapon against John Aaron Bailey[.]" Therefore, we conclude the State presented "substantial evidence of each essential element of the offense charged and substantial evidence that the defendant is the perpetrator." Cross, 345 N.C. at 716-17, 483 S.E.2d at 434. This assignment of error is overruled.
The record on appeal includes additional assignments of error not addressed by defendant in his brief to this Court. Pursuant to N.C.R. App. P. 28(b)(6) (2007), we deem them abandoned and need not address them.
No error.
Chief Judge MARTIN and Judge STROUD concur.
Report per Rule 30(e).