STATE OF NORTH CAROLINA v. LAVORACE ROMOODEE HARRISON

No. COA11-425

(FILED 7 FEBRUARY 2012)

## 1. Evidence—prior statement—recollection refreshed—no prejudicial error

The trial court did not err in a larceny of a dog case by allowing a witness to reread her prior statement to the jury. The trial court properly allowed the witness to use her statement to refresh her recollection, and when the witness read the statement into evidence, it was not as a past recollection recorded subject to the stricter foundational requirements. Even assuming *arguendo* that allowing the witness to read the statement into evidence was error, defendant could not show that it rose to the level required under the plain error standard of review.

**2. Evidence—written statement—erroneously sent to jury as exhibit—no prejudicial error**

The trial court erred in a larceny of a dog case by admitting a witness's written statement as a "court's exhibit" and giving the exhibit to the jury to review in the jury room rather than conducting the jury back to the courtroom. However, defendant failed to meet his burden of showing prejudice as a result of the trial court's failure to follow the requirements of N.C.G.S. § 15A-1233(a).

**3. Appeal and Error—Preservation of issues—raised for first time on appeal—dismissed**

Defendant's constitutional argument that the cumulative effect of the trial court's errors deprived him of a fair trial in violation of his constitutional rights was dismissed as defense counsel raised no objections at trial based on constitutional challenges.

**4. Larceny—sufficient evidence—motion to dismiss—properly denied**

The trial court did not err in a larceny of a dog case by denying defendant's motion to dismiss for insufficient evidence. The State presented sufficient evidence of each essential element of the offense charged and that defendant was the perpetrator.

**5. Evidence—pre- and post-arrest silence—erroneously admitted—no prejudicial error**

The trial court committed error in a larceny of a dog case by allowing the State to use defendant's pre- and post-arrest silence as substantive evidence of his guilt. However, the errors did not rise to the level of plain error because defendant could not show that the errors probably resulted in the jury reaching a different verdict than it otherwise would have reached.

Appeal by defendant from judgment entered 16 December 2010 by Judge Quentin T. Sumner in Nash County Superior Court. Heard in the Court of Appeals 12 October 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Tammy A. Bouchelle, for the State.*

*Daniel M. Blau for defendant.*

ELMORE, Judge.

Lavorace Romoodee Harrison (defendant) was convicted by a jury of larceny of a dog and now appeals. We hold that defendant received a trial free from prejudicial error and plain error.

## I. Background

On 27 January 2009, Judy Marshburn's one-year-old pit bull was stolen from her yard in Spring Hope. The dog was white with a brown patch over his eye, and Marshburn kept him in a dog pen in the back yard, with a brick in front of the gate to keep the dog from escaping. Marshburn never saw the dog again.

An investigator from the Nash County Sheriff's Department, Deputy Bryant, interviewed defendant after receiving an anonymous tip that defendant was transporting dogs. Defendant denied any knowledge of the larceny of Marshburn's dog. However, defendant was arrested for the larceny after the investigator spoke with Kristyn Stanco, who had called the Sheriff's Department with information about the larceny. Stanco and defendant were friends and had known each other for a long time; Stanco regularly braided defendant's hair for him. Stanco provided the following statement:

> On 02-04-09, Lavorace Harrison came to my house and was talking to me[,] Charleston, and Travis. Lavorace said that the police came and talked to him about stolen dogs and speakers. Lavorace then said that the police asked him about a blue pitt [sic] bull and Judy's white pitt [sic] bull with a brown patch. Lavorace then said that they will never find those dogs because I had pictures of them on my phone but I erased them and I also took them to Rocky Mount where they will never look. Lavorace then said that Buck Wheless helped them get Judy's dog the night it was stolen. Lavorace then stated that Buck then went back and broke into Judy's property after he helped them get the white pitt [sic] bull. I saw the pictures of the dogs in Lavorace's phone. He had four pictures of the blue pitt [sic] bull and 2 pictures of Judy's white pitt [sic] bull with the brown patch on his left eye.

Stanco testified that defendant had come to her house to have his hair braided, and as he was going through his cell phone, she saw several photos of pit bulls. One dog was gray or blue and the other was white with a brown patch over its eye.

At trial, during the State's direct examination of Stanco, the prosecutor showed Stanco her statement after he asked her what she told

Deputy Bryant when he came to her house and she provided the following response:

> When they asked me did I have a stolen dog, I just told them no, Lavorace had gave me that dog because the little puppies have died and—well, almost have died and I tried to help him help that dog out and he said he couldn't take care of it anymore, so I—I said I could take the dog and I can try and bring him back to life or save him or—I have the food and stuff. So, I tried to keep the dog, but the dog ended up dying any way.

At the prosecutor's direction, Stanco re-read the statement. She confirmed that it was a "true and accurate statement" and that she had nothing to add to it. The following colloquy then ensued:

> Q. And does that help recollect—help refresh your recollection of the statement that you gave to Officer Bryant that night or day?
>
> A. Yes, sir.
>
> Q. And my question goes back then after looking at that statement, did he say where he got that dog from or who he got the dog from?
>
> A. He didn't say exactly who it was from. He just said he dropped it off in Rocky Mount.
>
> Q. Okay. Whose name—
>
> A. Because I didn't—he said Judy—Judy's name, but I didn't know they were taking about that Judy. I thought it was another Judy.
>
> Q. I understand that, but they—but he clearly states that he got Judy's dog in that statement, is that correct?
>
> A. Yes, yes.
>
> Q. Okay. In fact, if you would, read your statement to the ladies and gentlemen of the jury if you would, please.

Stanco then read her statement to the jury, without objection by defendant. Stanco also testified that she saw defendant erase the photos of the dogs from his phone.

After the jury had deliberated for several hours, it sent a note out to the judge stating, "We are deadlocked 7 to 5. We do not seem to be

able to come to a decisive verdict. Could we see the written statement by Miss Stanko [*sic*]." Both the State and defense counsel stated that they had "no objection." The judge then asked, "All right, do you want me to bring them out? Do you want to see them back out?" Defense counsel replied, "No." The judge asked, "Are you sure?" And defense counsel replied, "Yes, Your honor." After the prosecutor agreed to send the statement in to the jury room, the judge said, "All right, Mr. Kearney pass that in and by agreement between the Defendant and the State I will not bring the jury back out. I will mark this Court's Exhibit 1 or A."

Within the hour, the jury returned with a verdict, finding defendant guilty. Defendant, who had a prior record level of I, was sentenced to four to five months' imprisonment. The sentence was suspended, and defendant was placed on twenty-four months' supervised probation and ordered to provide a DNA sample pursuant to N.C. Gen. Stat. § 15A-266.4.

## II. Arguments

### A. Stanco's Written Statement

[1] Defendant first argues that the trial court committed plain error by allowing Ms. Stanco to read her prior statement to the jury. He argues that the trial court improperly admitted Ms. Stanco's statement as a past recollection recorded. The State, on the other hand, argues that the trial court properly admitted Ms. Stanco's statement as a present recollection refreshed. Our Supreme Court has explained the distinction as follows:

> It is generally accepted that two types of aid are available for a witness: past recollection recorded and present recollection refreshed. Under present recollection refreshed[,] the witness' memory is refreshed or jogged through the employment of a writing, diagram, smell or even touch, and he testifies from his memory so refreshed. The evidence presented at trial comes from the witness' memory, not from the aid upon which the witness relies; thus, there is no need to engage in the foundational inquiry required under the doctrine of past recollection recorded. It is only where the testimony of the witness purports to be from refreshed memory but is clearly a mere recitation of the refreshing memorandum[] [that] such testimony is not admissible as present recollection refreshed and should be excluded by the trial judge.

*State v. Ysut Mlo*, 335 N.C. 353, 367, 440 S.E.2d 98, 104-05 (1994) (quotations and citations omitted).

Present recollection refreshed is addressed by Rule 612 of our Rules of Evidence, which states, in relevant part that "[i]f, while testifying, a witness uses a writing or object to refresh his memory, an adverse party is entitled to have the writing or object produced at the trial, hearing, or deposition in which the witness is testifying." N.C. Gen. Stat. § 8C-1, Rule 612(a) (2011). Past recollection recorded, on the other hand, is an exception to the hearsay rule and is governed by Rule 803(5):

> Recorded Recollection.—A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

N.C. Gen. Stat. § 8C-1, Rule 803(5) (2011). As noted in the official commentary, a past recollection recorded cannot "be received as an exhibit unless offered by an adverse party" in order "[t]o prevent a jury from giving too much weight to a written statement that cannot be effectively cross-examined[.]" N.C. Gen. Stat. § 8C-1, Rule 803(5) cmt. (2011). Because a true present recollection refreshed does not involve hearsay, "the rules governing [a witness's] testimony are those generally involved in the direct and cross-examination of witnesses." 2 Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 224, at 881 (7th ed. 2011). Thus, a writing used to refresh recollection is not admissible because it was used to refresh the witness's recollection, but it may be admissible for independent reasons. 1 Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 172, at 639 (7th ed. 2011); *see also State v. Spinks*, 136 N.C. App. 153, 160, 523 S.E.2d 129, 134 (1999) ("Here, the State's attempt to refresh the witness' recollection was unsuccessful, and no foundation was laid to suggest that the recorded statement was independently admissible.") (citing N.C. Gen. Stat. § 8C–1, Rule 901(a)).

Distinguishing between a writing that is offered as a past recollection recorded and one that is used to refresh a witness's recollection is critical because of the difference in admissibility requirements. Before a past recollection recorded can be read into evidence, certain

foundational requirements must be met. To establish a foundation for the introduction into evidence of a past recollection recorded, the witness, "by hypothesis, [must have] *no present recollection* of the matter contained in the writing." *State v. Gibson*, 333 N.C. 29, 50, 424 S.E.2d 95, 107 (1992) (quoting *United States v. Riccardi*, 174 F.2d 883, 887 (3d Cir. 1949) (emphasis added)), *overruled on other grounds by State v. Lynch*, 334 N.C. 402, 432 S.E.2d 349 (1993), and *State v. Bell*, 338 N.C. 363, 450 S.E.2d 710 (1994). In contrast,

> [u]nder present recollection refreshed the witness' memory is refreshed or jogged through the employment of a writing, diagram, smell or even touch, and he testifies from his memory so refreshed. Because of the independent origin of the testimony actually elicited, the stimulation of an actual present recollection is not strictly bounded by fixed rules but, rather, is approached on a case-by-case basis looking to the peculiar facts and circumstances present.

*Gibson*, 333 N.C. at 50, 424 S.E.2d at 107. Because "the evidence is the testimony of the witness at trial, whereas with a past recollection recorded the evidence is the writing itself," "the foundational questions raised by past recollection recorded are never reached." *Id.* The relevant test, then, "is whether the witness has an independent recollection of the event and is merely using the memorandum to refresh details or whether the witness is using the memorandum as a testimonial crutch for something beyond his recall." *State v. York*, 347 N.C. 79, 89, 489 S.E.2d 380, 386 (1997).

Here, Stanco had an independent recollection of her conversation with defendant as well as of making her statement to the investigator. When asked, she affirmed that her recollection had been refreshed. She then testified from memory, and that testimony included some details that were not contained in the statement, such as braiding defendant's hair and seeing defendant erase the photos of the dogs from his phone. Her testimony shows that she was not using her prior statement as a testimonial crutch for something beyond her recall. Accordingly, the trial court properly allowed Stanco to use her statement to refresh her recollection, and when Stanco read the statement into evidence, it was not as a past recollection recorded subject to the stricter foundational requirements.

Turning next to whether the trial court committed plain error by allowing Stanco to read the statement into evidence, we look to see if allowing Stanco to read the statement into evidence was error and, if

so, whether the error was " 'so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached.' " *State v. Leyva*, 181 N.C. App. 491, 499, 640 S.E.2d 394, 399 (2007) (quoting *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987)); *see also* N.C.R. App. P. 10(a)(4) (2011). Even if we assume *arguendo* that allowing Stanco to read the statement into evidence was error, defendant cannot show that it rose to the level required under our plain error standard of review. Stanco testified independently about the contents of the statement, and the jury heard nothing from her reading of the statement that it did not hear from her. Her testimony and her prior statement were consistent. In addition, defendant had the opportunity both to cross-examine Stanco about the statement and to testify himself when he took the stand. Accordingly, we conclude that it was not plain error for the trial court to permit Stanco to read her statement into evidence.

## B. Jury Request for Stanco's Statement

**[2]** Defendant next argues that the trial court erred by admitting Stanco's written statement as a "court's exhibit" and giving the exhibit to the jury to review in the jury room rather than conducting the jury back to the courtroom.

Section 15A-1233(a) states that, "[i]f the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom." N.C. Gen. Stat. § 15A-1233(a) (2011). Bringing the jury back to the courtroom is mandated by the statute and is not within the trial judge's discretion. *State v. Nobles*, 350 N.C. 483, 506, 515 S.E.2d 885, 900 (1999). However, "to be entitled to a new trial, defendant must demonstrate that there is a reasonable possibility that a different result would have been reached had the trial court's error not occurred." *Id.* (citing *State v. McLaughlin*, 320 N.C. 564, 570, 359 S.E.2d 768, 772 (1987)). Here, defendant cannot meet that burden. As in *Nobles*,

> [n]ot only did defendant's counsel agree with the trial court when it erroneously thought that it had discretion whether to bring the jury to the courtroom, but there was unanimous agreement among the State, the defendant, and the trial judge concerning the items requested by the jury; and the prosecution and defendant consented to permitting the jury to have those items.

*Id.* Accordingly, we reach the same conclusion as our Supreme Court did in *Nobles,* that "defendant has not met his burden of showing prejudice as a result of the trial court's failure to follow the requirements of N.C.G.S. § 15A-1233(a)." *Id.; see also State v. Helms,* 93 N.C. App. 394, 401, 378 S.E.2d 237, 241 (1989) (holding that the defendant "waived his right to assert, on appeal, the judge's failure to bring the jury to the courtroom" when his attorney consented to the judge's communication procedure).

Section 15A-1233(b) of our General Statutes states that, "[u]pon request by the jury and with consent of all parties, the judge may in his discretion permit the jury to take to the jury room exhibits and writings which have been received in evidence." N.C. Gen. Stat. § 15A-1233(b) (2011). Again, this section is a mandate, and the trial judge does not have discretion to give the jury exhibits or writings that have not been received in evidence. *State v. Combs,* 182 N.C. App. 365, 373, 642 S.E.2d 491, 498 (2007). However, as with a violation of § 15A-1233(a), it is not sufficient for the defendant to show that the trial court erred; he must also show that he was prejudiced. *Id.* at 374, 642 S.E.2d at 498. Again, defendant cannot meet this burden.

In *Combs,* the jury asked to see a statement made by the defendant. *Id.* at 372, 642 S.E.2d at 497. However, the written statement itself was never received in evidence; instead, a detective had read the statement into the record. *Id.* Although the trial judge considered bringing the jury back to the courtroom and allowing the detective to re-read the statement to them, the judge apparently dismissed that option for convenience reasons. *Id.,* 642 S.E.2d at 498. Over defense counsel's objection, the judge and the prosecutor decided that the prosecutor would redact the written statement and then submit the redacted statement to the jury. *Id.* at 373, 642 S.E.2d at 498. On appeal, this Court concluded that the defendant could not show prejudice because "[t]he trial court could have instructed the court reporter to that portion of [the detective's] testimony in which he reported defendant's statement to the jury under N.C. Gen. Stat. § 15A-1233(a)," and "the testimony would have been identical to the written document provided to the jury[.]" *Id.* at 374, 642 S.E.2d at 498. Thus, "there [wa]s no reasonable possibility that the jury would have reached a different verdict if [the detective's] redacted report had not been sent back to the jury room." *Id.*

We reach the same conclusion here, because, under § 15A-1233(a), the trial court could have instructed the court reporter to read back that part of Stanco's testimony in which she read her statement into

the record. The testimony would have been identical to the written document given to the jury, and there was no reasonable possibility that the jury would have reached a different verdict had her statement not been sent back to the jury room. Despite this outcome, we emphasize that it was error—just not prejudicial error—for the trial judge to submit the written statement to the jury when it had not first been admitted into evidence, and we expressly discourage the practice.

## C. Constitutional Arguments

[3] For the first time, on appeal, defendant argues that "the cumulative effect of the trial court's errors" deprived him of a fair trial, in violation of the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 19 and 23, of the North Carolina Constitution. "A constitutional issue not raised at trial will generally not be considered for the first time on appeal." *State v. Maness*, 363 N.C. 261, 279, 677 S.E.2d 796, 808 (2009) (quotations, citation, and alteration omitted). Here, defense counsel raised no objections at trial based on constitutional challenges. Indeed, defense counsel made no objections at all with respect to the arguments raised by defendant on appeal. Accordingly, we do not review defendant's constitutional argument.

## D. Denial of Defendant's Motion to Dismiss

[4] Defendant next argues that the trial court erred by denying his motion to dismiss because the State did not present sufficient evidence that defendant took the victim's dog. We disagree.

"When a defendant moves for dismissal, the trial court must determine whether the State has presented substantial evidence of each essential element of the offense charged and substantial evidence that the defendant is the perpetrator." *State v. Cross*, 345 N.C. 713, 716-17, 483 S.E.2d 432, 434 (1997) (citation omitted). "If substantial evidence of each element is presented, the motion for dismissal is properly denied." *Id.* at 717, 483 S.E.2d at 434. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted). "In considering the motion, the trial court must view the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from the evidence, and resolving any contradictions in favor of the State." *State v. Anderson*, 181 N.C. App. 655, 659, 640 S.E.2d 797, 801 (2007) (citation omitted).

To convict a defendant of larceny, the State must prove the following elements: 1) taking personal property belonging to another; 2) carrying it away; 3) without the consent of the possessor; 4) with the intent to deprive the possessor of it permanently; 5) knowing that the taker is not entitled to it.

State v. Cave, 174 N.C. App. 580, 584, 621 S.E.2d 299, 302 (2005) (citing N.C. Gen. Stat. § 14-72); see also N.C. Gen. Stat. § 14-81 (2011) (larceny of a dog is a Class I felony).

Defendant asserts that the only evidence that he was the person who took the dog was Stanco's statement, which he argues "does not prove that [he] participated in the larceny." Instead, he contends, the statement only shows that Buck Wheless stole the dog, leaving defendant's role in the larceny ambiguous. We disagree. Both Stanco's statement and her other testimony can support a finding that defendant himself took the dog. Although defendant is correct that Stanco testified that defendant said that Wheless helped "them" get the dog, and it's possible to interpret "them" as excluding defendant, Stanco clarified that she meant that defendant took the dog when the prosecutor asked, "[H]e clearly states that he got Judy's dog in that statement, is that correct?" Moreover, the State, not defendant, is entitled to all reasonable inferences that may be drawn from the evidence, including whether "them" referred to defendant. Accordingly, we hold that the trial court properly denied defendant's motion to dismiss for insufficient evidence.

## E. Defendant's Pre- and Post-Arrest Silence

[5] In his last argument, defendant contends that the trial court committed plain error by allowing the State to use his pre- and post-arrest silence as substantive evidence of his guilt. Specifically, defendant argues that testimony by Deputy Bryant violated his constitutional right to remain silent. First, when Deputy Bryant was explaining the circumstances of defendant's initial interview, he stated: "So, I continued to interview with him. He provided me—he denied any involvement, wished to give me no statement, written or verbal." Second, when Deputy Bryant was discussing his arrest of defendant, the State asked him if defendant made any statements after serving the arrest warrant on defendant, and Deputy Bryant responded, "After he was mirandized [sic], he waived his rights and provided no further verbal or written statements." Defendant did not object to either statement, so we review for plain error.

STATE v. HARRISON

[218 N.C. App. 546 (2012)]

This Court recently set out the rules governing the use of a defendant's pre- and post-arrest silence at trial:

> Whether the State may use a defendant's silence at trial depends on the circumstances of the defendant's silence and the purpose 'for which the State intends to use such silence." *State v. Boston*, 191 N.C. App. 637, 648, 663 S.E.2d 886, 894, *appeal dismissed and disc. review denied*, 362 N.C. 683, 670 S.E.2d 566 (2008). In *Boston*, this Court explained that a defendant's pre- arrest silence and post-arrest, pre-*Miranda* warnings silence may not be used as substantive evidence of guilt, but may be used by the State to impeach the defendant by suggesting that the defendant's prior silence is inconsistent with his present statements at trial. *Id.* at 649 n.2, 663 S.E.2d at 894 n.2. A defendant's post-arrest, post-*Miranda* warnings silence, however, may not be used for any purpose. *Id.* at 648-49, 663 S.E.2d at 894. *See also Doyle*, 426 U.S. at 619, 49 L. Ed. 2d at 98, 96 S. Ct. at 2245 (holding that "use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment"). Because different law applies to the different circumstances surrounding the testimony challenged by defendant, we analyze each circumstance separately.

*State v. Mendoza*, _____ N.C. App. _____, _____, 698 S.E.2d 170, 173-74 (2010).

Here, as in *Mendoza*, defendant testified after Deputy Bryant, so the State could not use Deputy Bryant's statement to impeach defendant. *See id.* at _____, 698 S.E.2d at 175 (discounting the State's "proposition that the State may present impeachment evidence in advance of a defendant's actually testifying"). Also, as in *Mendoza*, Deputy Bryant's testimony regarding "defendant's silence was admitted as substantive evidence during the State's case in chief and not for the purpose of impeachment" by "pointing out to the jury that defendant chose to remain silent when in [the deputy's] presence rather than provide the explanation proffered at trial." *Id.* at _____, 698 S.E.2d at 176. Thus, it was error for the trial court to admit either statement by Deputy Bryant.

However, these errors do not rise to the level of plain error because defendant cannot show that the errors were "so fundamental as to amount to a miscarriage of justice or which probably resulted in

the jury reaching a different verdict than it otherwise would have reached." *Leyva*, 181 N.C. App. at 499, 640 S.E.2d at 399 (quotations and citation omitted).

## III. Conclusion

We hold that defendant received a trial free from prejudicial or plain error.

No prejudicial error; no plain error.

Judges BRYANT and STEPHENS concur.