IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA 15-670

 Filed: 16 August 2016

Wake County, No. 12 CRS 200918

STATE OF NORTH CAROLINA

 v.

PARIS JUJUAN TODD, Defendant.

 Appeal by defendant from order entered 15 January 2015 by Judge Donald W.

Stephens in Superior Court, Wake County. Heard in the Court of Appeals 19

November 2015.

 Attorney General Roy A. Cooper III, by Assistant Attorney General Joseph L.
 Hyde, for the State.

 N.C. Prisoner Legal Services, Inc., by Reid Cater, for defendant-appellant.

 STROUD, Judge.

 Defendant Paris Jujuan Todd appeals the trial court’s denial of his motion for

appropriate relief (“MAR”). On appeal, defendant argues that the trial court erred in

denying his MAR because the evidence presented at trial was insufficient to support

a conviction and had this been raised during his prior appeal, there is a reasonable

probability that defendant’s conviction would have been overturned. After reviewing

the evidence presented below, we agree, and conclude that the trial court should have

granted defendant’s MAR. Accordingly, we reverse the trial court’s denial of
 STATE V. TODD

 Opinion of the Court

defendant’s MAR and remand to the trial court to enter a ruling granting defendant’s

MAR and vacating his conviction.

 Facts

 Defendant was convicted of robbery with a dangerous weapon on 14 June 2012

and defendant appealed that conviction to this Court. In his first appeal, defendant

raised two issues: “(1) the trial court erred when it denied defendant’s motion for a

continuance made on the first day of trial, and alternatively, (2) he received

ineffective assistance of counsel.” State v. Todd, 229 N.C. App. 197, 749 S.E.2d 113,

2013 WL 4460143, *1, 2013 N.C. App. LEXIS 875, *1 (2013) (unpublished) (“Todd I”).

This Court found no error, and the Supreme Court denied defendant’s petition for

discretionary review. State v. Todd, 367 N.C. 322, 755 S.E.2d 612 (2014).

 On 21 October 2014, defendant filed an MAR with the trial court. In the MAR,

defendant moved that his convictions be vacated and a new trial granted, arguing

that he “received ineffective assistance of appellate counsel in that counsel failed to

argue that his case should have been dismissed for lack of evidence.” In addition,

defendant’s MAR requested “post-conviction discovery from the State under N.C.

Gen. Stat. § 15A-1415(f).” On 15 January 2015, the trial court summarily denied

defendant’s MAR without a hearing. In its order denying defendant’s MAR, the trial

court noted as follows:

 A review of all the matters of record, including the
 opinion of the North Carolina Court of Appeals which is

 -2-
 STATE V. TODD

 Opinion of the Court

 attached, clearly demonstrates that the evidence was
 sufficient to support the jury verdict and appellate counsel
 rendered effective assistance to Defendant in his appeal.

 The Appellate Court was clearly aware of the nature
 of the fingerprint evidence and determined that such was
 sufficient to support the Defendant’s conviction.
 Otherwise, the Court was obligated to reverse the
 conviction upon the Court’s own motion.

On 12 March 2015, defendant filed a petition for certiorari of the trial court’s order

denying his MAR, which this Court allowed on 27 March 2015.

 Discussion

 I. Denial of MAR

 a. Standard of review

 “Our review of a trial court’s ruling on a defendant’s MAR is whether the

findings of fact are supported by evidence, whether the findings of fact support the

conclusions of law, and whether the conclusions of law support the order entered by

the trial court.” State v. Peterson, 228 N.C. App. 339, 343, 744 S.E.2d 153, 157 (2013)

(internal quotation marks omitted). “The trial court’s findings of fact are binding if

they are supported by competent evidence and may be disturbed only upon a showing

of manifest abuse of discretion. However, the trial court’s conclusions are

fully reviewable on appeal.” State v. Thomsen, __ N.C. App. __, __, 776 S.E.2d 41, 48

(quotation marks omitted), disc. review denied, __ N.C. __, 778 S.E.2d 83 (2015).

 -3-
 STATE V. TODD

 Opinion of the Court

 In the trial court’s order denying defendant’s MAR, which is the order at issue

in this appeal, there are no findings of fact, and the trial court determined, as a

matter of law, that the issues raised by defendant had been considered by this Court

in his first appeal and that based upon this Court’s opinion, the evidence was

sufficient to support the conviction and thus his appellate counsel was not ineffective.

We will therefore review this conclusion de novo.

 b. “Law of the case” doctrine

 Defendant argues that the evidence presented was insufficient to support his

conviction, and that the “trial court erred by not granting [defendant’s] motion to

dismiss, and had this been raised on appeal, there is a reasonable probability that

[his] conviction would have been overturned.” Before we consider this issue, however,

we must determine whether the trial court was correct in its determination that the

issues raised by the MAR had already been determined by this Court in defendant’s

first appeal.

 In this case, the trial court determined:

 A review of all the matters of record, including the
 opinion of the North Carolina Court of Appeals which is
 attached, clearly demonstrates that the evidence was
 sufficient to support the jury verdict and appellate counsel
 rendered effective assistance to Defendant in his appeal.

 The Appellate Court was clearly aware of the nature
 of the fingerprint evidence and determined that such was
 sufficient to support the Defendant’s conviction.
 Otherwise, the Court was obligated to reverse the

 -4-
 STATE V. TODD

 Opinion of the Court

 conviction upon the Court’s own motion.

 Although it did not use the term, the trial court was recognizing the “law of the

case” doctrine in its statement regarding this Court’s prior review of defendant’s case.

 The law-of-the-case doctrine generally provides that when
 a court decides upon a rule of law, that decision should
 continue to govern the same issues in subsequent stages in
 the same case. The doctrine expresses the practice of
 courts generally to refuse to reopen what has been decided,
 but it does not limit courts’ power. Thus, the doctrine may
 describe an appellate court’s decision not to depart from a
 ruling that it made in a prior appeal in the same case.

Musacchio v. United States, __ U.S. __, __, 193 L. Ed. 2d 639, 648-49, 136 S. Ct. 709,

716 (2016) (citations, quotation marks, and brackets omitted). Based upon the law of

the case doctrine, if this Court’s prior opinion addressed the sufficiency of the

evidence to support defendant’s conviction, neither we nor the trial court would be

able to review it again and would be bound by that prior ruling.

 Yet for the law of the case doctrine to apply, the issue presented must

 have been both raised and decided in the prior opinion.

 [T]he doctrine of the law of the case contemplates
 only such points as are actually presented and necessarily
 involved in determining the case. The doctrine does not
 apply to what is said by the reviewing court, or by the
 writing justice, on points arising outside of the case and not
 embodied in the determination made by the Court. Such
 expressions are obiter dicta and ordinarily do not become
 precedents in the sense of settling the law of the case.

 In every case what is actually decided is the law
 applicable to the particular facts; all other legal

 -5-
 STATE V. TODD

 Opinion of the Court

 conclusions therein are but obiter dicta.

 On the subject of obiter dicta, . . . if the statement in
 the opinion was superfluous and not needed for the full
 determination of the case, it is not entitled to be accounted
 a precedent, for the reason that it was, so to speak,
 rendered without jurisdiction or at least extra-judicial.
 Official character attaches only to those utterances of a
 court which bear directly upon the specific and limited
 questions which are presented to it for solution in the
 proper course of judicial proceedings. Over and above what
 is needed for the solution of these questions, its
 deliverances are unofficial.

 True, where a case actually presents two or more
 points, any one of which is sufficient to support decision,
 but the reviewing Court decides all the points, the decision
 becomes a precedent in respect to every point decided, and
 the opinion expressed on each point becomes a part of the
 law of the case on subsequent trial and appeal. In short, a
 point actually presented and expressly decided does not
 lose its value as a precedent in settling the law of the case
 because decision may have been rested on some other
 ground.

 The rule that a decision of an appellate court is
 ordinarily the law of the case, binding in subsequent
 proceedings, is basically a rule of procedure rather than of
 substantive law, and must be applied to the needs of justice
 with a flexible, discriminating exercise of judicial power.
 Therefore, in determining the correct application of the
 rule, the record on former appeal may be examined and
 looked into for the purpose of ascertaining what facts and
 questions were before the Court.

Hayes v. City of Wilmington, 243 N.C. 525, 536-37, 91 S.E.2d 673, 682-83 (1956)

(citations, quotation marks, and ellipses omitted).

 -6-
 STATE V. TODD

 Opinion of the Court

 Thus, “the law of the case applies only to issues that were decided in the former

proceeding, whether explicitly or by necessary implication, but not to questions which

might have been decided but were not.” Goldston v. State, 199 N.C. App. 618, 624,

683 S.E.2d 237, 242 (2009), aff'd, 364 N.C. 416, 700 S.E.2d 223 (2010). See also Goetz

v. N. Carolina Dep’t of Health & Human Servs., 203 N.C. App. 421, 432, 692 S.E.2d

395, 402-03 (2010) (“The law of the case doctrine . . . generally prohibits

reconsideration of issues which have been decided by the same court, or a higher

court, in a prior appeal in the same case.” (quotation marks omitted)).

 As noted above, the trial court found that issues raised by defendant’s MAR

were barred by the law of the case doctrine. But for an issue to be barred, it must

have been “actually presented and necessarily involved in determining the case” in

the first appeal, so we must consider if it was both presented and “necessarily

involved” in this court’s prior ruling. In the first appeal, defendant raised two issues:

(1) “that the trial court committed prejudicial error in denying defendant’s motion for

a continuance after defense counsel was served with essential discovery material on

11 June 2012, the day before trial[,]” and (2) “that, if the motion for a continuance

was properly denied, he is entitled to a new trial because he was denied effective

assistance of counsel.” Todd I, 229 N.C. App. 197, 749 S.E.2d 113, 2013 WL 446013,

at *2, *4, 2013 N.C. App. LEXIS 875, at *4, *11.

 -7-
 STATE V. TODD

 Opinion of the Court

 Defendant’s arguments in the first appeal focused entirely upon his claim that

his motion to continue should have been granted so that he could retain an expert

witness to review the fingerprint evidence which had been provided to his counsel

only a day before trial. This Court noted that defendant’s counsel had been “notified

of the State’s intention to use fingerprint evidence as early as 18 January 2012” and

the case was tried in June 2012. Id., 2013 WL 4460143, at *2, 2013 N.C. App. LEXIS

875, at *4. This Court stated that

 because defense counsel knew the fingerprints would be
 provided at some point before trial, she had ample
 opportunity to retain a forensic expert for when the
 fingerprints eventually arrived. Despite knowing this, in
 her motion for a continuance counsel only stated that “it
 does not appear to be clear to me that [the latent
 fingerprint] might be a perfect match, and I’m asking for a
 continuance in the fact I need somebody with more
 expertise than myself to review this.”

 Moreover, the failure to identify an expert witness
 also evidences a lack of specificity regarding the reasons for
 requesting the continuance. Defense counsel failed to show
 (1) which expert would be called; (2) what testimony would
 be elicited by the expert; and (3) how defendant’s case
 would have been stronger with expert testimony. In
 addition to counsel’s aforesaid statement, she went on to
 state that “[i]f you are uninclined to continue the case . . . I
 would ask that you at least give me today to try to find an
 expert witness that could potentially testify in this case.”
 (Emphasis added.) This vague assertion resembles an
 “intangible hope” that helpful evidence may surface.

Id., 2013 WL 4460143, at *3-4, 2013 N.C. App. LEXIS 875, at *9-10 (citations

omitted).

 -8-
 STATE V. TODD

 Opinion of the Court

 In the prior appeal, defendant argued only that he lost an opportunity to have

an expert review the evidence in an attempt to demonstrate that the State’s forensic

evidence was flawed. In his MAR, defendant’s argument assumes that the State’s

evidence was correct and the fingerprint on the backpack was actually his but

contends that even if the fingerprint is his, “there was not sufficient evidence to show

that [defendant]’s fingerprint could only have been impressed at the time of the

crime.” Our Supreme Court has noted that

 Fingerprint evidence, standing alone, is sufficient to
 withstand a motion for nonsuit only if there is substantial
 evidence of circumstances from which the jury can find that
 the fingerprints could only have been impressed at the time
 the crime was committed. What constitutes substantial
 evidence is a question of law for the court.

 Circumstances tending to show that a fingerprint
 lifted at the crime scene could only have been impressed at
 the time the crime was committed include statements by
 the defendant that he had never been on the premises,
 statements by prosecuting witnesses that they had never
 seen the defendant before or given him permission to enter
 the premises, fingerprints impressed in blood.

State v. Irick, 291 N.C. 480, 491-92, 231 S.E.2d 833, 841 (1977) (citations and

quotation marks omitted). Thus, defendant did not raise, and this Court’s prior

opinion did not expressly address, the issue of sufficiency of the evidence to support

defendant’s conviction.

 The trial court, however, went a bit further than the law of the case doctrine

allows, as it seems to have based its determination upon the fact that this Court was

 -9-
 STATE V. TODD

 Opinion of the Court

“clearly aware of the nature of the fingerprint evidence” and must have decided that

it was sufficient to support defendant’s conviction or this Court was “obligated to

reverse the conviction upon the Court’s own motion.” We are unable to find any case

law supporting any “obligation” or even any authority for this Court to sua sponte

address sufficiency of the evidence to support a conviction. To the contrary, it is well-

established that

 Appellate review is limited to those questions clearly
 defined and presented to the reviewing court in the parties’
 briefs, in which arguments and authorities upon which the
 parties rely in support of their respective positions are to
 be presented. It is not the role of the appellate courts to
 create an appeal for an appellant, nor is it the duty of the
 appellate courts to supplement an appellant’s brief with
 legal authority or arguments not contained therein.

First Charter Bank v. Am. Children’s Home, 203 N.C. App. 574, 580, 692 S.E.2d 457,

463 (2010) (citations, quotation marks, and ellipses omitted).

 The State’s brief acknowledges as much, stating: “Assuming this part of the

trial court’s order is erroneous, it is also immaterial. Omission of this paragraph does

not impair the ruling which, as explained above, is otherwise correct.” But if we omit

this paragraph, we are left only with the first paragraph, which stated that “[a]

review of all the matters of record, including the opinion of the North Carolina Court

of Appeals which is attached, clearly demonstrates that the evidence was sufficient

to support the jury verdict and appellate counsel rendered effective assistance to

Defendant in his appeal.” We have already determined that the issue of sufficiency

 - 10 -
 STATE V. TODD

 Opinion of the Court

of the evidence was not determined in the first appeal so the issue is not barred by

the law of the case doctrine and the trial court’s ruling is not “otherwise correct.” We

must therefore consider the issues raised in defendant’s MAR.

 c. Sufficiency of evidence to support conviction

 Defendant argues that the trial court erred in denying his MAR because he

received ineffective assistance of appellate counsel. He contends that if the issue of

sufficiency of the evidence to support his conviction had been raised in the first

appeal, there is a reasonable probability that his conviction would have been

reversed.

 On a motion for nonsuit the evidence must be
 considered in the light most favorable to the State, giving
 the State the benefit of every reasonable inference to be
 drawn therefrom.

 . . . . The test of the sufficiency of the evidence to
 withstand such a motion is the same whether the evidence
 is circumstantial, direct, or both. When the motion for
 nonsuit calls into question the sufficiency of circumstantial
 evidence, the question for the court is whether a reasonable
 inference of defendant’s guilt may be drawn from the
 circumstances. If so, it is for the jury to decide whether the
 facts, taken singly or in combination, satisfy them beyond
 a reasonable doubt that the defendant is actually guilty.

 On the other hand, if the evidence raises merely a
 suspicion or conjecture as to either the commission of the
 offense, or defendant’s identity as perpetrator, the motion
 for nonsuit should be allowed.

Irick, 291 N.C. at 491, 231 S.E.2d at 840-41 (citations and quotation marks omitted).

 - 11 -
 STATE V. TODD

 Opinion of the Court

 This Court summarized the facts from which defendant’s conviction arose in

our prior opinion:

 Shortly before midnight on 23 December 2011, the
 Raleigh Police Department responded to a report of an
 armed robbery at 325 Buck Jones Road. Upon arrival,
 George Major (the “victim”) informed police that, as he was
 walking home from work, an unknown African-American
 male approached him from behind, placed his hand on his
 shoulder, told him to get on the ground if he did not want
 to be hurt, and then forced him to the ground on his
 stomach. Once victim was on the ground, a second
 unknown African-American male approached and held
 victim’s hands while the original assailant went through
 victim’s pockets and felt around victim’s clear plastic
 backpack. As the assailants prepared to flee, they ordered
 victim to remain facedown on the ground until he counted
 to 200 because they “didn't want to shoot [him].” Victim
 complied until he could no longer hear the assailants’
 footsteps. The assailants took victim’s wallet containing an
 identification card, credit cards, and a small velvet
 drawstring bag containing change.

 During the police investigation, Stacey Sneider of
 the City-County Identification Bureau was dispatched to
 assist in processing the backpack for fingerprints. During
 her analysis, Sneider collected two fingerprints from the
 backpack, one of which was later determined to be the
 defendant’s right middle finger. As a result, a warrant was
 issued for defendant’s arrest.

 On 18 January 2012, Officer Potter of the Raleigh
 Police Department stopped defendant for illegal tint on his
 car’s windows near the scene of the robbery. During the
 stop, Officer Potter came across defendant’s outstanding
 warrant and arrested defendant.

 - 12 -
 STATE V. TODD

 Opinion of the Court

Todd I, 229 N.C. App. 197, 749 S.E.2d 113, 2013 WL 4460143, at *1, 2013 N.C. App.

LEXIS 875, at *1-3.

 Our prior opinion noted only the fingerprint evidence’s existence because of the

limited issues presented on appeal. In this appeal, we focus on whether “there is

substantial evidence of circumstances from which the jury can find that the

fingerprints could only have been impressed at the time the crime was committed.”

Irick, 291 N.C. at 492, 231 S.E.2d at 841 (quotation marks omitted). Defendant

argues that the fingerprint evidence here “stood alone” since the single, partial

fingerprint was the only evidence that connected defendant to this crime. The

question of whether there is “substantial evidence” is a question of law and thus we

consider this issue de novo. Id.

 We first note that many of the cases cited by the State regarding fingerprint

evidence address evidence found at the “scene” of the crime, usually a building of

some sort, Irick, 291 N.C. at 486, 231 S.E.2d at 838 (defendant’s fingerprint found on

victim’s window sill); State v. Jackson, 284 N.C. 321, 334, 200 S.E.2d 626, 634 (1973)

(testimony offered that latent fingerprint on window matched defendant’s fingerprint

on file); or upon an item stolen from the victim, State v. Blackmon, 208 N.C. App. 397,

402, 702 S.E.2d 833, 837 (2010) (defendant’s fingerprint found on computer tower in

front lawn); State v. Boykin, 78 N.C. App. 572, 575, 337 S.E.2d 678, 680 (1985)

(defendant’s fingerprint found on stolen radio). In this instance, however, the

 - 13 -
 STATE V. TODD

 Opinion of the Court

backpack was not stolen and none of the items removed from it were ever recovered.

In addition, the backpack is not a stationary crime “scene” but rather is a moveable

object which Mr. Major had owned for about six months prior to the crime and wore

regularly on the way to and from work, riding on a public bus, and which he left

unattended on a coatrack while he worked in a local restaurant. Defendant’s single

partial fingerprint, as well as other unidentified fingerprints, were found on the

exterior of the backpack, on the outside surface, not the surface which would be

against the back of the wearer.

 The circumstances of the crime alone provide no evidence which might show

that “the fingerprint[ ] could only have been impressed at the time the crime was

committed.” Irick, 291 N.C. at 492, 231 S.E.2d at 841 (quotation marks omitted). The

State’s evidence showed that on 23 December 2011, officers responded to the scene of

the crime immediately upon Mr. Major’s call. He was unable to give any detailed

physical description of his assailants and could tell only that they were African

American men. He was able to discern that the hands of the man holding his wrists

were “rough-skinned, callused hands” and that one man’s jacket sleeves were tan and

the other man’s sleeves were dark blue or black. He was able to clearly hear the

men’s voices. The officers used a canine to see if they could pick up a track for the

two assailants, and Officer Martinez testified that he thought the dog had picked up

 - 14 -
 STATE V. TODD

 Opinion of the Court

a track, but it ended in a parking lot off Portree Road, north of where the incident

occurred. They did not find either assailant that night.

 After fingerprints were lifted from the backpack, they were compared to those

in a database, which generated several potential matches, and ultimately it was

determined that one partial fingerprint matched Defendant’s right middle finger.

Detective Codrington, who had investigated the incident, received information of the

match on the fingerprint from the backpack in January. He then showed a picture of

defendant to Mr. Major to see if he was “a friend of his” but Mr. Major did not

recognize him. On 12 January 2012, he obtained the arrest warrant for defendant

based upon the fingerprint.

 On 18 January 2012, Officer Potter of the Raleigh Police Department stopped

defendant’s vehicle in the Westcliff Court neighborhood off of Buck Jones Road for

illegally tinted windows. Defendant was driving down a dead-end road before he was

stopped. The place where defendant’s car was stopped was “approximately about a

few hundred yards” from the location on Buck Jones Road where Mr. Major had been

robbed on 23 December 2011. After checking his license, Officer Potter asked

defendant “what he was doing in the area” and he was “kind of hesitant about if he

lived there or if he was visiting. Said he was stopping by to see a friend, wouldn’t

provide any information as to exactly where the friend was as far as which

apartment.” Another officer arrived to confirm the percentage of tint on the windows,

 - 15 -
 STATE V. TODD

 Opinion of the Court

which was “15 percent which is illegal” so he began to write a citation. Upon checking

on defendant’s license, Officer Potter discovered the outstanding warrant for

defendant’s arrest and then arrested him. When Officer Potter told defendant that

he was under arrest for robbery, defendant’s response was that “he seemed more

preoccupied with us getting away from the vehicle. It wasn’t like shocking as far as

a warrant.” He seemed “very nervous” but wanted “to try and hurry up to get

transported wherever.” Defendant’s car was secured in accordance with protocol at

the scene where he was arrested, but it was not searched.

 Officer Potter transported defendant to Detective Codrington’s office. When

Detective Codrington entered the interrogation room where defendant was waiting,

he noted that defendant was sleeping and he thought that “a reasonable person would

have been a little more upset being charged about something that they didn’t do and

not sleeping in the interrogation room.” Detective Codrington read defendant his

Miranda rights; defendant agreed to talk to him and the interview was videotaped.

Detective Codrington described defendant as a “pretty well-educated, well-spoken

individual.” Defendant “denied any involvement in the robbery.” He asked defendant

where he lived, and he said he was “back and forth between his mom’s house in Apex”

and “his sister’s grandmother’s house close to downtown.” Detective Codrington

asked defendant where he was picked up, and defendant said “Westcliff” and then

that “’I used to be over there but,’ and then trailed off.” Neither the Westcliff Court

 - 16 -
 STATE V. TODD

 Opinion of the Court

address which was “the closest residence we could in that area kind of associate him

with” or any of the residences where defendant mentioned staying was ever searched.

Defendant was unable to tell Detective Codrington where he was on the night of 23

December 2011. Detective Codrington asked defendant how his fingerprint might

have gotten on the backpack, and he said “maybe a friend of his had gotten robbed or

something and now the bag was in the victim’s possession, something around that.”

 Detective Codrington also testified that Westcliff Court, where defendant was

stopped, was “about 300 yards from the scene of the crime” and described this fact as

important to him because it was “very, very close as far as the proximity, and it would

explain and kind of explained to me from the direction that the person ran from after,

explains that sort of in the direction of Westcliff Court and Little Sue’s Mini-mart

which everybody cuts behind.” Detective Codrington also talked to defendant’s

mother and from his investigation, he determined that “all information that I could

gather at that point kind of led me to him living at 448 Westcliff Court.”

 Detective Codrington described the area around the scene of the incident,

noting that Westcliff was an apartment complex and there were also private

residences nearby on Buck Jones Road. The canine unit had lost the trail on the night

of 23 December on Portree Place, a “little private street from the townhouse they sort

of plopped in the middle.” Portree Place is a loop or “half moon” with a group of

private townhomes as well as “two other separate buildings . . . right next to those

 - 17 -
 STATE V. TODD

 Opinion of the Court

townhomes.” In regard to where the canine stopped tracking, Detective Codrington

noted that “[a]ll the canine therefore is looking at recently, recently traveled

properties, so if it gets into an apartment complex, typically if a bunch of people just

happen to walk past that place, the canine track will stop because it’s confusing the

dog. So highly traveled properties aren’t good for initial canine searches as opposed

to when they have somebody, like somebody’s scent on somebody’s property where

they’re following.” He described the layout of the buildings as “like old Army housing”

with a “common area that you walk in. There’s no doors on that side. You just kind

of walk into the common area, and then once you get into the building, it’s either five

or six units on each side of the hall, and then upstairs, the same way, so it didn’t track

to a specific door or anything.”

 We are unable to find any evidence, much less substantial evidence, of

“[c]ircumstances tending to show that a fingerprint lifted at the crime scene could

only have been impressed at the time the crime was committed[.]” Id. The State

notes several prior cases which have identified some of the circumstances which may

be sufficient. In State v. Miller, 289 N.C. 1, 6, 220 S.E.2d 572, 575 (1975), our

Supreme Court referenced false statements by the defendant that he had never been

on the premises. In this case, however, there are no premises involved. In Jackson,

our Supreme Court noted that the victim testified that she did not know the

defendant, had never seen him prior to when he entered her apartment, and that

 - 18 -
 STATE V. TODD

 Opinion of the Court

“[n]othing appears in the record to show that defendant had ever been in the

apartment occupied by [the victim] prior to [the date of the offense].” 284 N.C. at 335,

200 S.E.2d at 635. In Jackson, the victim was able to identify the defendant by his

voice. Id. Here, by contrast, although the victim heard his assailants speak, no

identification was made based on voice recognition. Moreover, as we have already

pointed out, in this case, there are no “premises,” only a mobile backpack.

 In Blackmon, the defendant’s fingerprint was found a computer tower left on

the grass outside the house that had been broken into. 208 N.C. App. at 402, 702

S.E.2d at 837. This Court held that the evidence was sufficient to show that the

defendant was the perpetrator of the crime. Id. at 403, 702 S.E.2d at 837. Similarly,

in Boykin, the defendant’s fingerprint was found on a stolen radio, which this Court

concluded was enough to support his conviction for larceny. 78 N.C. App. at 575, 337

S.E.2d at 680. In the present case, however, the stolen items were never recovered,

and only fingerprint evidence found was the partial print linking defendant to the

victim’s mobile backpack.

 In State v. Thomas, 291 N.C. 687, 688, 231 S.E.2d 585, 586 (1976), the Supreme

Court referenced fingerprints impressed in blood, but those fingerprints were found

on a serrated steak knife and a Cheerios box in the kitchen of the victim’s home,

where the victim had been stabbed to death. In addition, about $400.00 to $500.00

cash was missing from the Cheerios box, and defendant had been aware that the

 - 19 -
 STATE V. TODD

 Opinion of the Court

victim kept cash in the Cheerios box. Id. There is simply no comparable evidence in

this case.

 The State also argues that if other evidence, taken alongside the fingerprint,

permits a reasonable inference that defendant was the perpetrator, the trial court

should deny the motion to dismiss. The State argues that there is “other evidence”

connecting defendant to the robbery. Specifically, the State notes that “[d]efendant

was arrested within a month of the robbery and only a few hundred yards from the

crime scene.” That is true, but defendant was stopped on Westcliff Court for a tinted

window violation. And it is clear from the State’s evidence that the area where

defendant was stopped was a public street in a residential area with many

apartments, townhomes, and private residences.

 Although being found in close proximity to a crime scene at or very near the

time of a crime may be “other evidence” which could connect a defendant to the crime,

we have been unable to determine how defendant’s presence in the general vicinity

nearly a month after the crime was committed is relevant. The State cites to Irick,

where the Supreme Court noted that “defendant’s print was found on the inside frame

of the window from which the tissue box and pasteboard had been removed on the

night of the burglary, but other unidentified prints were found on and around the

same window. These facts do not constitute ‘substantial’ evidence that the print could

have only been impressed at the time of the alleged burglary.” 291 N.C. at 492, 231

 - 20 -
 STATE V. TODD

 Opinion of the Court

S.E.2d at 841. In Irick, the court determined that “other circumstances” could

support a reasonable inference that defendant was the perpetrator. Id. Specifically,

 Defendant was observed by a police officer coming from the
 general direction of the Hipp home shortly after the
 burglary transpired; defendant had in his pocket at the
 time of his arrest loose bills in the same denominations and
 total amount as those stolen from the Hipp house;
 defendant was tracked by the bloodhound from the Wood
 home to the place where the stolen vehicle was parked (the
 dirty kitchen towel linked the Hipp and Wood burglaries),
 and defendant attempted to flee from police officers shortly
 after the burglaries took place.

Id., 231 S.E.2d at 841-42.

 The only resemblance this case bears to Irick is the presence of a fingerprint

identified as defendant’s along with other unidentified fingerprints, in a place that

could suggest that it may be been impressed at the time of the crime. None of the

“other circumstances” are present. Defendant was not seen anywhere near the scene

of the crime when it occurred. None of the stolen property was ever recovered. The

canine was unable determine exactly where the perpetrators went, having lost the

track in a heavily travelled courtyard. No one tried to flee from the officers on the

night of the crime, and no physical evidence of any sort other than the lone partial

print on the outside of the backpack connected defendant to the incident.

 The State also argues that that fact that Detective Codrington “believed

Defendant lived on Westcliff Court, where his vehicle was stopped” somehow

 - 21 -
 STATE V. TODD

 Opinion of the Court

“supports a reasonable inference of guilt,”1 citing to State v. Cross, 345 N.C. 713, 483

S.E.2d 432 (1997). In Cross, the victim was attacked as she got into her car, and the

assailant beat her and forced her to get into the back seat. He took her wallet and

ATM card and drove her car to make “numerous stops for money” and eventually

stopped the car and left. Id. at 715, 483 S.E.2d at 434. The State’s evidence showed

a “latent fingerprint on the edge of the left rear door of the victim’s vehicle” which

was from

 only one finger and was a portion of the finger, “like it had
 been cut off.” This fact prompted Agent Duke to process
 the rear quarter panel adjacent to the area where the print
 was found on the rear door. No fingerprints or partial
 fingerprints were found in the area adjacent to the left rear
 door. In other words, the rear portion or remainder of this
 partial print did not extend over to the rear quarter panel
 of the car. Agent Joseph Ludas, a latent print examiner
 with the City/County Bureau of Identification, testified, as
 an expert in the field of fingerprint identification, that the
 latent fingerprint found on the left rear door of the victim’s
 vehicle matched the right index finger of the defendant.

 The fact that the defendant’s fingerprint was only a
 partial print, which was cleanly cut off and did not extend
 over to the rear quarter panel, strongly suggests that the
 door was open when the defendant’s finger contacted the
 vehicle. The evidence is uncontradicted that the only time
 the rear driver’s side door was opened during the victim’s
 stay in Raleigh was when the assailant opened the door
 and shoved the victim into the backseat. Moreover, Agent
 Ludas testified that a lot of pressure and twisting was used
 when the defendant’s finger made contact with the vehicle.

 1 The State also notes that “[d]efendant now admits that he kept an apartment on Westcliff
Court.” But this “admission” is in defendant’s post-trial affidavit filed in support of his MAR and is
not in the evidence presented at trial.

 - 22 -
 STATE V. TODD

 Opinion of the Court

 This fact, when viewed in the light most favorable to the
 State, logically suggests that the print was left as
 defendant pushed the back door closed. The fingerprint
 evidence is consistent with the victim’s account of the crime
 and does not support an inference that the defendant
 merely touched the victim’s automobile while walking
 through the Crabtree Sheraton parking lot.

Id. at 718, 483 S.E.2d at 435.

 The Supreme Court held in Cross that this evidence was sufficient to show that

the defendant’s fingerprint “could only have been impressed at the time the crime

was committed.” Id. at 718, 483 S.E.2d at 435. The Court then noted that although

the fingerprint evidence alone was sufficient to survive the motion to dismiss, there

was other “corroborating evidence” that

 the assailant abandoned the victim within blocks of where
 the defendant was frequently seen and where defendant
 was eventually located and arrested, that a pathway
 existed near that location which led to the back of the
 apartment defendant was in when he was arrested, that
 the defendant made efforts to change his appearance by
 shaving his head, that the defendant made an effort to
 evade arrest, and that the defendant repeatedly denied to
 police officers that his name was “Cross.”

Id. at 718-19, 483 S.E.2d at 435-36.

 Cross bears more resemblance to this case than the others cited by the State,

since the fingerprint was on a mobile object and not stationary premises or a weapon.

In Cross, however, the decisive factor was the victim’s description of exactly how the

assailant had grabbed the car door, which was consistent with the characteristics of

 - 23 -
 STATE V. TODD

 Opinion of the Court

the print that was found in the place she described. Id. at 718, 483 S.E.2d at 435.

Here, by contrast, the fingerprint had no distinguishing features which would

indicate how or when it was impressed, and it was on the outside of the backpack.

And the other “corroborating evidence” noted in Cross was far stronger than here, as

the Cross defendant was arrested in an apartment which was at the end of the

pathway near where he left the victim and her car, altered his appearance, and denied

his name. Id. at 718-19, 483 S.E.2d at 435-36. Here, at the most, defendant had an

apartment residence in a densely populated area of townhouses and apartments in

the general vicinity of the place where a canine lost a trail nearly a month before the

defendant’s arrest on a public street nearby. This is simply not comparable to the

evidence noted in other cases addressing “other circumstances” which along with

fingerprint evidence connects a defendant to a crime. Many people had residences in

that area, and other unidentified fingerprints were also found on the backpack.

 The State also argues that “although Mr. Major could not identify who robbed

him, his description of his assailant’s manner of speaking was consistent with

Defendant’s manner of speaking,” citing to two places in the trial transcript. We give

the State the benefit of every reasonable inference from the evidence, but still the

State’s implication that defendant was identified by his voice goes far beyond

anything the record can support. First, although the jury did hear the videotaped

recording of the interview with defendant, Mr. Major never identified the voice in

 - 24 -
 STATE V. TODD

 Opinion of the Court

that video as sounding like one of the men who assaulted him. Mr. Major’s entire

testimony about the voices was the following:

 Q. You were able to hear these assailants talk; is
 that correct?
 A. Yes.
 Q. What if anything did you notice about the
 language that they used?
 A. They didn’t use a lot of eubonics [sic]. They
 spoke to me very clearly. I understood what they were
 saying.

The other evidence cited by the State is Detective Codrington’s testimony regarding

his interview of defendant:

 Q. You had the opportunity to speak to him that
 night?
 A. Yes.
 Q. He’s a pretty well-educated, well-spoken
 individual?
 A. Yes.

 Defendant argues that State v. Scott, 296 N.C. 519, 522, 251 S.E.2d 414, 417

(1979) most resembles his, since in that case the single thumbprint of the defendant

stood alone, with no other evidence to show that it “could only have been placed on

the box at the time of the homicide.” We agree that there are similarities and

comparisons that can be drawn. In Scott, the defendant’s thumbprint was found in

the victim’s home on a “small metal box on top of the desk in the den.” Id. at 521, 251

S.E.2d at 416. The box contained papers and “odds and ends” and was kept in a closed

but unlocked filing cabinet in the den. Id. The victim was found in the home, dead,

 - 25 -
 STATE V. TODD

 Opinion of the Court

shot through the head, with his hands and feet tied with tape. Id. at 520, 251 S.E.2d

at 415. The house had been ransacked and the deceased’s pocket watch and money

from his wallet had been stolen. Id. at 520-21, 251 S.E.2d at 415-16. Ms. Goodnight,

who also lived in the home, testified that the defendant was “ ‘a total stranger’ ” and

she had never seen him and he had never visited the house to her knowledge. Id. at

521, 251 S.E.2d at 416. She notified the police immediately upon finding her uncle

on the floor and was careful not to disturb anything in the house until after the

officers “completed their investigation.” Id. The Supreme Court found that this

single thumbprint, standing alone, was not sufficient to support defendant’s

conviction. Id. at 526, 251 S.E.2d at 419.

 The Scott Court analyzed other cases in which a fingerprint was found on the

premises of the crime and noted that in those cases, “the prosecuting witnesses were

in a position to have personal knowledge of all persons visiting the premises and . . .

there was some additional evidence of guilt.” Id. at 525, 251 S.E.2d at 418. The Court

noted that in Scott, Ms. Goodnight “was simply not in a position to know who came

into the house ‘during the five week days’ ” since she worked during the week, while

her uncle who was retired, remained at home. Id. at 526, 251 S.E.2d at 419. The

State’s expert testified that the print could have been placed on the box “several

weeks before the homicide.” Id.

 Ultimately, the Court concluded that

 - 26 -
 STATE V. TODD

 Opinion of the Court

 In the light of all these facts, we are constrained to
 hold that the evidence was insufficient to withstand a
 motion to dismiss. The burden is not upon the defendant
 to explain the presence of his fingerprint but upon the
 State to prove his guilt. . . . We reach the conclusion that
 the evidence introduced in the present case is sufficient to
 raise a strong suspicion of the defendant’s guilt but not
 sufficient to remove that issue from the realm of suspicion
 and conjecture.

Id. at 526, 251 S.E.2d at 419 (citations and quotation marks omitted).

 The State argues that “[d]efendant’s inability to offer a plausible explanation

when initially confronted with the evidence supports a reasonable inference of guilt.”

The State describes defendant’s argument in his brief that the fingerprint may have

been impressed “while the backpack was on a crowded bus or on the coat rack at Red

Lobster” (where Mr. Major worked) as “unavailing.” Yet the flaw in the State’s

argument is that “[t]he burden is not upon the defendant to explain the presence of

his fingerprint but upon the State to prove his guilt.” Id. The State’s evidence was

that the print could have been on the backpack for “10 seconds or 10 days or 10

months” and that Mr. Major regularly wore the backpack on a crowded bus to and

from work. He also left it unattended on a coat rack at work. If in the Scott case, Ms.

Goodnight’s testimony that she was not aware of defendant ever having been in her

home was not sufficient to show that the thumbprint could not have been impressed

at any other time than when her uncle was killed, certainly we cannot say that there

was no other opportunity for defendant to impress a print on the outside of a backpack

 - 27 -
 STATE V. TODD

 Opinion of the Court

that has regularly been exposed to the public. In this regard, defendant’s apartment

near the scene of the crime does not favor the State’s case, since that could make it

more likely that he was on the same bus with Mr. Major during the months before

the incident and may have inadvertently touched the bag.

 Citing only to Cross, 345 N.C. at 718-19, 483 S.E.2d at 435-36 the State also

argues that defendant’s behavior was “incompatible with innocence” because he was

“not surprised” when he was arrested and he fell asleep in the interrogation room.

We are unable to determine how Cross supports this proposition. In Cross, the

defendant “shav[ed] his head, . . . made an effort to evade arrest, and . . . repeatedly

denied to police officers that his name was ‘Cross.’ ” Id. at 719, 483 S.E.2d at 436.

This behavior could be seen as “incompatible with innocence.” Here, in comparison,

defendant was not particularly nervous, even when he was stopped, and he was not

evasive. He simply maintained his innocence during his questioning and denied

knowing anything about the crime, but the State argues that even this is

incriminating. The State has not cited any case in which an absence of nervousness

was seen as evidence of guilt; typically we see exactly the opposite evidence and

argument. See, e.g., State v. McClendon, 350 N.C. 630, 638, 517 S.E.2d 128, 134

(1999) (discussing the use of nervousness in determination of reasonable suspicion of

criminal activity and noting that “[n]ervousness, like all other facts, must be taken

in light of the totality of the circumstances. It is true that many people do become

 - 28 -
 STATE V. TODD

 Opinion of the Court

nervous when stopped by an officer of the law. Nevertheless, nervousness is an

appropriate factor to consider when determining whether a basis for a reasonable

suspicion exists.” (Citations omitted)).

 As we observed upon a similar occasion in State v. Cutler, 271 N.C. 379, 383,

156 S.E.2d 679, 682 (1967), we reach the conclusion that the evidence introduced in

the present case “is sufficient to raise a strong suspicion of the defendant’s guilt but

not sufficient to remove that issue from the realm of suspicion and conjecture.” See

also State v. Jones, 280 N.C. 60, 67, 184 S.E.2d 862, 866 (1971) (“The circumstances

raise a strong suspicion of defendant’s guilt, but we are obliged to hold that the State

failed to offer substantial evidence that defendant was the only who shot his wife in

the back. The evidence proves only that at the time his wife was killed defendant

was degradedly drunk and intermittently violent.”); State v. Minton, 228 N.C. 518,

521, 46 S.E.2d 296, 298 (1948) (“The circumstances relied on by the State are

inconclusive and do not lead to a satisfactory deduction that the accused, and no one

else, perpetrated the crimes alleged in this action. All of these circumstances can be

true, and the defendant can still be innocent.”).

 After considering all of the State’s evidence in light of the applicable cases, we

cannot find that there was substantial evidence to show that defendant’s fingerprint

could have only been impressed at the time of the crime, and thus, the trial court

should have allowed defendant’s motion to dismiss.

 - 29 -
 STATE V. TODD

 Opinion of the Court

 d. Ineffective assistance of counsel

 Defendant argues that his appellate counsel in the first appeal “performed

below an objective standard of reasonableness by failing to argue that the evidence

was insufficient.”

 The United States Supreme Court has set forth the
 test for determining whether a defendant received
 constitutionally ineffective assistance of counsel, which our
 Supreme Court expressly adopted in State v. Braswell, 312
 N.C. 553, 562-63, 324 S.E.2d 241, 248 (1985). Pursuant to
 the two-part test, First, the defendant must show that
 counsel’s performance was deficient. This requires
 showing that counsel made errors so serious that counsel
 was not functioning as the “counsel” guaranteed the
 defendant by the Sixth Amendment. Second, the
 defendant must show that the deficient performance
 prejudiced the defense. This requires showing that
 counsel’s errors were so serious as to deprive the defendant
 of a fair trial, a trial whose result is reliable. Strickland v.
 Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693[, 104
 S. Ct. 2052, 2064] (1984). With respect to the first element,
 “a court must indulge a strong presumption that counsel’s
 conduct falls within the wide range of reasonable
 professional assistance; that is, the defendant must
 overcome the presumption that, under the circumstances,
 the challenged action might be considered sound trial
 strategy.” Id. at 689, 80 L. Ed. 2d at 694-95[, 104 S. Ct. at
 2065] (citation and internal quotation marks omitted). The
 second element of the Strickland test requires that the
 defendant show “a reasonable probability that, but for
 counsel’s unprofessional errors, the result of the proceeding
 would have been different. A reasonable probability is a
 probability sufficient to undermine confidence in the
 outcome.” Id. at 694, 80 L. Ed. 2d at 698[, 104 S. Ct. at
 2068]. Our Supreme Court also has noted that defendants
 who seek to show ineffective assistance of counsel must
 satisfy both prongs: “[I]f a reviewing court can determine

 - 30 -
 STATE V. TODD

 Opinion of the Court

 at the outset that there is no reasonable probability that in
 the absence of counsel’s alleged errors the result of the
 proceeding would have been different, then the court need
 not determine whether counsel’s performance was actually
 deficient.” Braswell, 312 N.C. at 563, 324 S.E.2d at 249.

Blackmon, 208 N.C. App. at 400-01, 702 S.E.2d at 836.

 As to the first prong of the Strickland test, the State argues that defendant’s

prior appellate counsel “apparently made a strategic decision to pursue the

constitutional claim that the trial court’s failure to grant a continuance deprived him

of adequate time to prepare a defense” and that he “received ineffective assistance of

trial counsel.” The State does not explain how omission of this issue could be a

“strategic” decision. The law regarding fingerprint evidence was well-established at

the time of the first appeal and it has not changed since then. The issues and

arguments presented in the first appeal are not mutually exclusive or conflicting to

the issue of sufficiency of the evidence. The text of the brief in defendant’s first appeal

was only about 19 pages, so the page limitations of our Appellate Rules did not force

counsel to make a “strategic decision” to limit the brief to the two issues presented.

 As to the second prong of Strickland, the State argues that “[d]efendant was

not prejudiced by counsel’s failure to challenge the sufficiency of the evidence on

appeal” because the evidence was sufficient. But we have determined that there is “

‘a reasonable probability that, but for counsel’s unprofessional errors, the result of

the proceeding would have been different’ ” in the first appeal, had the issue of

 - 31 -
 STATE V. TODD

 Opinion of the Court

sufficiency of the evidence been raised. Blackmon, 208 N.C. App. at 401, 702 S.E.2d

at 836 (quoting Strickland, 466 U.S. at 687, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2064).

As discussed above, if defendant had raised this issue in his first appeal, this Court

would have addressed it and there is a reasonable probability that we would have

come to the same result as we have in this opinion, which is that the trial court should

have allowed defendant’s motion to dismiss. Therefore, the trial court erred by

failing to grant defendant’s MAR.

 We have determined that defendant had ineffective assistance of appellate

counsel in his first appeal and that he likely would have been successful had he raised

sufficiency of the evidence. Defendant’s motion did not raise any factual issues, only

the legal question of sufficiency of the evidence, so there was no need for an

evidentiary hearing and the trial court should have granted the MAR. Moreover,

since we find that defendant’s MAR should have been granted and that he has

established that the fingerprint evidence presented at trial was insufficient, we need

not address his request for post-conviction discovery. See, e.g., State v. McDowell, 217

N.C. App. 634, 638, 720 S.E.2d 423, 425 (2011) (“Because we find that the trial court

erred in denying defendant’s motion to dismiss, we do not reach defendant’s other

arguments.”).

 Conclusion

 - 32 -
 STATE V. TODD

 Opinion of the Court

 In sum, we find that the trial court erred in concluding that defendant received

effective assistance of his appellate counsel because the State presented insufficient

evidence that defendant committed the underlying offense, and if defendant’s

appellate counsel had raised this issue in the initial appeal, defendant’s conviction

would have been reversed. Consequently, we hold that the trial court’s denial of

defendant’s MAR was in error. We, therefore, reverse the trial court’s order and

remand to the trial court to enter an order granting defendant’s MAR and vacating

the defendant’s conviction.

 REVERSED AND REMANDED.

 Judge DIETZ concurs with separate opinion.

 Judge TYSON dissents.

 - 33 -
No. COA15-670 – State v. Todd

 DIETZ, Judge, concurring.

 I concur in the judgment. There is no evidence, much less “substantial

evidence” to suggest that the fingerprint “could only have been impressed at the time

the crime was committed.” State v. Irick, 291 N.C. 480, 492, 231 S.E.2d 833, 841

(1977). The victim carried his backpack around with him in public, and any number

of people could have touched it in any number of public places.

 Thus, under Irick, the fingerprint evidence was sufficient to survive a motion

to dismiss only if “other circumstances tend to show that defendant was the criminal

actor.” Id. But the only “other circumstances” tying Todd to the robbery is his

coincidental traffic stop, one month after the crime, on a dead-end road just a few

hundred yards from where the robbery occurred. That, and the fact that Todd was

an African-American man, as was the alleged perpetrator.

 These facts alone cannot be enough to constitute “other circumstances” under

Irick. If they were, then fingerprint evidence would be admissible against anyone

who shared the same race and gender as the perpetrator, and who lived near the

scene of a crime, even if there was no evidence that the fingerprint was impressed at

the time of the crime. And this, of course, wholly undermines the rationale of Irick.

 Still, it seems that the outcome here may not be what our Supreme Court

intended when it established this fingerprint rule in cases like Irick. Suppose, for

example, that instead of the fingerprint, it was some other circumstantial evidence,
 STATE V. TODD

 Dietz, J., concurring

such as a witness who later saw the defendant with some of the items stolen from the

victim. That evidence, combined with the coincidental stop nearby, and the fact that

he matched the race and gender of the alleged perpetrator, would be sufficient to

survive a motion to dismiss. See State v. Maines, 301 N.C. 669, 673, 273 S.E.2d 289,

293 (1981). Indeed, in those circumstances, the law actually creates a presumption

that the defendant stole the items—a presumption that is “strong or weak depending

on the circumstances of the case.” Id.

 It may be that our Supreme Court intended for Irick to be broader than this

Court reads it. For example, in a case like this one, where the fingerprint match is

relatively strong, perhaps the “other circumstances” tying the defendant to the crime

can be much weaker yet still satisfy the Irick standard. This Court quite frequently

entertains appeals challenging the admission of fingerprint evidence under Irick.

See, e.g., State v. Martin, 2016 WL 1745224, 786 S.E.2d 432 (N.C. Ct. App. May 3,

2016) (unpublished); State v. Dawson, 2016 WL 3889912, ___ S.E.2d ___ (N.C. Ct.

App. July 19, 2016) (unpublished). Guidance from our State’s highest court would

benefit us as we review these frequently raised issues.

 2
 No. COA15-670 – State v. Todd

 TYSON, Judge, dissenting.

 This Court’s prior issuance of a writ of certiorari brings review of defendant’s

IAC claim properly before us. Defendant has failed to show the performance of his

appellate counsel in the prior appeal was deficient. The record contains sufficient

evidence of all elements of the charge of robbery with a dangerous weapon. I would

affirm the trial court’s denial of defendant’s motion for appropriate relief, and find no

error in defendant’s jury conviction and the judgment entered for robbery with a

dangerous weapon. I respectfully dissent.

 I. Standard of Review

 “To show ineffective assistance of appellate counsel, [d]efendant must meet the

same standard for proving ineffective assistance of trial counsel.” State v. Simpson,

176 N.C. App. 719, 722, 627 S.E.2d 271, 275 (2006) (citing Smith v. Robbins, 528 U.S.

259, 285, 120 S. Ct. 746, 764, 145 L.Ed.2d 756, 780 (2000)) disc. review denied, 360

N.C. 653, 637 S.E.2d 191 (2006). Judge Stroud accurately sets forth our standard of

review to determine ineffective assistance of counsel.

 First, the defendant must show that counsel’s performance
 was deficient. This requires showing that counsel made
 errors so serious that counsel was not functioning as the
 “counsel” guaranteed the defendant by the Sixth
 Amendment. Second, the defendant must show that the
 deficient performance prejudiced the defense. This
 requires showing that counsel’s errors were so serious as to
 deprive the defendant of a fair trial, a trial whose result is
 reliable.
 STATE V. TODD

 Tyson, J., dissenting

Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984).

 II. State’s Evidence

 Appellate counsel in defendant’s prior appeal was not deficient. Sufficient

evidence was presented to the jury on each element of the charge of robbery with a

dangerous weapon, to include defendant’s identity as a perpetrator. Defendant’s trial

counsel moved to dismiss the charges at the close of the State’s evidence and renewed

her motion at the close of all the evidence. Defendant did not testify or offer any

evidence at trial. Upon a motion to dismiss, evidence presented by the State is

reviewed “in the light most favorable to the State, giving the State the benefit of every

reasonable inference to be drawn therefrom.” State v. Irick, 291 N.C. 480, 491, 231

S.E.2d 833, 840 (1977). The trial court heard and considered the evidence, and denied

the motions to dismiss.

 The fingerprint evidence in this case does not “stand alone” to warrant a higher

level of scrutiny. Citing Irick, Judge Stroud asserts appellate counsel on the prior

appeal was deficient, and our Court must “focus on whether ‘substantial evidence of

circumstances from which the jury can find that the fingerprints could only have been

impressed at the time the crime was committed.’” Id. at 492, 231 S.E.2d at 841.

Presuming the plurality’s notion that this higher level of scrutiny is required,

“[o]rdinarily, the question of whether the fingerprints could have been impressed only

 2
 STATE V. TODD

 Tyson, J., dissenting

at the time the crime was committed is a question of fact for the jury.” Id. at 489, 231

S.E.2d at 839.

 The assertion that “[t]he circumstances of the crime alone provide no evidence

which might show that ‘the fingerprint [] could only have been impressed at the time

the crime was committed’” is incompatible with the record evidence. The record

shows the State produced more than just “stand alone” evidence of defendant’s

fingerprint on the exterior of the victim’s plastic backpack to help identify defendant

to this crime.

 The victim called the police immediately after he was robbed on the sidewalk

near 325 Buck Jones Road. The victim testified he did not see the faces of his

assailants, but saw their hands and arms. He described a perpetrator’s hands as

calloused, described the color of shirt sleeves, and the race and sex of both attackers.

The victim indicated it sounded like his assailants had fled across Buck Jones Road.

The police canines were able to track the perpetrators to a common area in the back

of Portree Place townhomes, not far from the crime scene at 325 Buck Jones Road.

 Trial testimony placed Portree Place townhomes near the intersection of Buck

Jones Road and Bashford Drive. Detective Codrington testified Westcliff Court was

“very, very close as far as the proximity, and it would explain . . . from the direction

that the person ran from after [the robbery], explains that sort of in the direction of

Westcliff Court and Little Sue’s Mini-mart which everybody cuts behind.” He

 3
 STATE V. TODD

 Tyson, J., dissenting

testified that near the time of the crime “[a]ll the info [he] could gather” pointed to

defendant “living at 448 Westcliff Court,” near the crime scene. Detective Codrington

testified the Westcliff Court entrance is right on Bashford Road, parallel to the side

of the Little Sue’s Mini-mart and near the back of Portree Place townhomes to where

the canines tracked the attackers.

 Three weeks after the victim was robbed, defendant was stopped by police on

Westcliff Court for an illegal tint on his vehicle’s windows, a few hundred yards from

the crime scene. Defendant was arrested on the outstanding robbery warrant and

was taken into the station for questioning.

 Detective Codrington interviewed defendant. Defendant waived his right to

remain silent and was unable to account for his whereabouts on the night of the

robbery. Defendant offered an alternative “hypothesis” about how his fingerprint

could have been placed upon the victim’s backpack.

 Defendant told the detective that perhaps “someone he knew had a bag that

he had presumably touched and then that bag had gotten stolen, and that’s how [the

victim’s] bag” may have “had his fingerprint on it.” During his interview, Defendant

did not identify who that “someone he knew” was, or possibly when, where, and how

he could have touched the victim’s backpack and left his identifiable fingerprint

thereon other than during the robbery.

 4
 STATE V. TODD

 Tyson, J., dissenting

 The State also offered the testimony of the crime scene investigator, who lifted

defendant’s print from the backpack, as well as the testimony of Officer Heinrich, the

latent unit supervisor at the City County Bureau of Identification [CCBI]. Officer

Heinrich testified defendant was linked by CCBI’s database to the latent prints lifted

from the backpack. Once the database produced matches, Heinrich physically

reviewed the prints and concluded it was defendant’s fingerprint present on the

outside of the backpack.

 The victim testified he had owned the backpack for 6 months and wore it to

and from work. He indicated he wrapped the pack inside a jacket before he hung it

on the employee coat rack in “the dry stock past the kitchen” in “an employee only”

area at his work. The victim testified one of his assailants held him down, while the

other was “going through his pockets and pawing around in [his] backpack.”

 III. Ineffective Assistance of Appellate Counsel

 Effective appellate advocates winnow out weaker arguments and focus on

those more likely to prevail on appeal. Jones v. Barnes, 463 U.S. 745, 751, 77 L. Ed.

2d 987, 994 (1983). This accepted discretionary process lies within the professional

judgment of appellate counsel. When the State’s evidence is sufficient to support a

conviction, defendant’s counsel may use his professional judgment and select what he

believes to be “the most promising issues for review.” Id. at 752, 77 L. Ed. 2d at 994.

This record and defendant’s MAR provide nothing to support a claim that defendant’s

 5
 STATE V. TODD

 Tyson, J., dissenting

appellate counsel was ineffective, either under the standards provided by the

Supreme Court of the United States or the Supreme Court of North Carolina to vacate

his conviction on ineffective assistance of counsel. See Strickland, 466 U.S. at 687, 80

L. Ed. 2d at 673; State v. Braswell, 312 N.C. 553, 324 S.E.2d 241 (1985).

 Defendant-Irick argued to our Supreme Court that the fingerprint evidence

should not have been admitted into evidence until after the State showed that the

print could only have been impressed at the time the crime was committed. The

Supreme Court found defendant to have misconstrued the cases on this subject. Irick,

291 N.C. at 488, 231 S.E.2d at 839. The Court held “the probative force, not the

admissibility, of a correspondence of fingerprints found at the crime scene with those

of the accused, depends on whether the fingerprints could have been impressed only

at the time the crime was perpetrated.” Id. at 489, 231 S.E.2d at 839.

 As discussed by the plurality, the defendant in Irick also challenged the trial

court’s denial of his motion for nonsuit (dismissal). Id. at 490, 231 S.E.2d at 840. The

Irick Court recognized that a key piece of circumstantial evidence to connect the

defendant in the case was the fingerprint identification.

 The Irick Court found other circumstances tended to show the defendant was

the criminal actor. The defendant was observed by a police officer coming from the

general direction of the burglarized home shortly after the burglary transpired; the

defendant had loose bills in the same denominations and total amount as those stolen;

 6
 STATE V. TODD

 Tyson, J., dissenting

the defendant was tracked by the bloodhound from one crime scene to another, and

attempted to flee from the police soon after the burglaries took place. The Court held

“[a]ll of these circumstances, taken with the fingerprint identification, when

considered in the light most favorable to the State, permit a reasonable inference that

defendant was the burglar at the Hipp house.” Id. at 492, 231 S.E.2d at 841-42.

 When viewed in the light most favorable to the State, all of the circumstances

shown by the State permit a reasonable inference that defendant was one of the

robbers of Mr. Major. Where there is more than just fingerprint evidence “standing

alone,” the State is not required to provide a higher level of “substantial evidence of

circumstances from which the jury can find the fingerprint[] could only have been

impressed at the time the crime was committed” to survive a motion to dismiss. Id.

at 491-92, 231 S.E.2d at 841. In addition, “[o]rdinarily, the question of whether the

fingerprints could have been impressed only at the time the crime was committed is

a question of fact for the jury.” Id. at 489, 231 S.E.2d at 839.

 IV. Conclusion

 Upon defense counsel’s motion to dismiss for insufficiency of the evidence, the

trial court reviewed the evidence, twice denied the motions, and allowed the case to

be decided by the jury. The jury heard all of the evidence, the trial court’s

instructions, and found defendant to be guilty of robbery with a dangerous weapon

beyond a reasonable doubt.

 7
 STATE V. TODD

 Tyson, J., dissenting

 The test of the sufficiency of the evidence to
 withstand such a motion is the same whether the evidence
 is circumstantial, direct, or both. When the motion for
 nonsuit calls into question the sufficiency of circumstantial
 evidence, the question for the court is whether a reasonable
 inference of defendant’s guilt may be drawn from the
 circumstances. If so, it is for the jury to decide whether the
 facts, taken singly or in combination, satisfy them beyond a
 reasonable doubt that the defendant is actually guilty.

Id. at 491, 231 S.E.2d at 841 (quotation marks and citations omitted) (emphasis

supplied).

 Reviewing the uncontroverted facts offered by the State, in the light most

favorable to the State, the trial court properly denied defense counsel’s motion to

dismiss at the close of the State’s evidence and at the close of all evidence. Appellate

counsel apparently knew the standard of review and this question of fact was a jury

issue, and made a tactical decision not to raise this issue on appeal. Defendant failed

and cannot show his appellate counsel was deficient in his failure to raise the trial

court’s denial of defendant’s motions to dismiss in defendant’s initial appeal.

Strickland, 466 U.S. at 687, 80 L. Ed. 2d at 693. The standard of review applicable

to this appeal and the questions of fact for the jury should end our inquiry at the first

prong.

 Defendant also fails to meet Strickland’s second prong: but for appellate

counsel’s alleged “deficient performance” a different result would have occurred had

the argument been raised by counsel on his prior appeal. Id. at 687, 80 L. Ed. 2d at

 8
 STATE V. TODD

 Tyson, J., dissenting

693. The conclusions to find error under either prong and vacate defendant’s

conviction is error. No error occurred in the trial court’s denials of the motions to

dismiss, the submission of the fingerprint evidence to the jury, and the jury’s verdict

or the judgment entered thereon. I respectfully dissent.

 9